403 So.2d 1144 (1981)
Leigh Anne GOYINGS, a Minor, by and through Betty Goyings, As Next Friend and Natural Mother, and Betty Goyings, Individually, Appellant,
v.
The JACK AND RUTH ECKERD FOUNDATION; Eckerd Wilderness Educational System; E-Nini-Hassee Girls Camp; the Trustees of the Jack and Ruth Eckerd Foundation, to-Wit: Gerald S. Rehm, Executive Director, Jack Eckerd, Ruth Eckerd, J. Floyd Glisson, James Swann, and Robert Coleman; Joe Callan, Director of E-Nini-Hassee Girls Camp; Pauline Murphy; Judy Bell; Kathy "Doe"; Carol "Doe"; and the Travelers Insurance Company, a Connecticut Corporation, Appellees.
No. 80-2304.
District Court of Appeal of Florida, Second District.
September 23, 1981.
*1145 R. Michael Underwood and Kenneth D. Morse of Matthias & Matthias, Orlando, for appellant.
Rick A. Mattson of Mattson & McGrady, St. Petersburg, for appellees.
SCHEB, Chief Judge.
In this appeal we must determine the validity of an exculpatory clause and its effect on the appellant's suit to recover damages for injuries sustained by her minor child.
Appellant, Betty Goyings, enrolled her minor daughter, Leigh Anne, in E-Nini-Hassee Girls Camp, a camp for children with emotional problems operated by the Eckerd Foundation and the Eckerd Wilderness Educational System. She signed a contract submitted by the camp agreeing to pay $750 a month for the full care and support of her minor daughter. The fee included payment for Leigh Anne's participation in a therapeutic program. While on a two-week canoe trip supervised by the camp, Leigh Anne suffered mental and physical injuries requiring her to be hospitalized.
Appellant, individually and as mother and next friend of Leigh Anne, filed a suit naming appellees as defendants and seeking damages for her daughter's injuries. She alleged that Leigh Anne had been under continuing psychiatric care prior to entering camp and was required to take prescribed medicine to keep her mentally stable. She further alleged that she relied upon the camp's verbal agreement to administer the medicine. She complained that the camp's failure to do so on the canoe trip caused Leigh Anne's injuries. Appellant pled in the alternative that the camp's failure to administer the medication was either negligent, intentional, or with a reckless disregard of the consequences.
Appellees filed their answer and then moved for summary judgment relying on an exculpatory clause in the contract appellant signed. The clause stated:
It is further agreed that reasonable precautions will be taken by Camp to assure the safety and good health of said boy/girl but that Camp is not to be held liable in the event of injury, illness or *1146 death of said boy/girl, and the undersigned, does fully release Camp, and all persons concerned therewith, for any such liability.
The trial court held that the quoted clause released appellees from any liability and awarded them a summary final judgment. We disagree with the court's interpretation of the exculpatory clause, and find that there were genuine issues of material fact. Accordingly, we reverse.
At the outset we observe that an attempt by a defendant to exonerate himself from liability for an intentional tort is against public policy. Zuckerman-Vernor Corp. v. Rosen, 361 So.2d 804 (Fla. 4th DCA 1978); Fuentes v. Owen, 310 So.2d 458 (Fla. 3d DCA 1975). Nevertheless, an exculpatory clause, while not favored, may operate to absolve a defendant from liability arising out of his own negligent acts. For such a clause to be effective, however it must clearly state that it releases the party from liability for his own negligence. L. Luria & Son, Inc. v. Alarmtec International Corp., 384 So.2d 947 (Fla. 4th DCA 1980); Middleton v. Lomaskin, 266 So.2d 678 (Fla. 3d DCA 1972). In Middleton, the plaintiff appealed from a summary final judgment entered against him in an action for personal injuries which he sustained in a fall on the leased premises. His lease provided that the landlord shall not be liable for "any and all claims for loss, damage or injury of any nature whatsoever to person or property ... whether caused by negligent acts of the LANDLORD, its agents or servants or otherwise." 266 So.2d at 679. The court recognized that exculpatory clauses which attempt to relieve a party of his own negligence are not favored. Nonetheless, it upheld that particular provision because it clearly stated that the landlord would not be liable for his own negligence. Accord, Sniffen v. Century National Bank, 375 So.2d 892 (Fla. 4th DCA 1979); Orkin Exterminating Co. v. Montagano, 359 So.2d 512 (Fla. 4th DCA 1978); Gulf Oil Corp. v. Atlantic Coast Line Railroad, 196 So.2d 456 (Fla. 2d DCA 1967); Nat Harrison Associates, Inc. v. Florida Power & Light Co., 162 So.2d 298 (Fla. 3d DCA 1964).
Although all Florida courts have generally agreed that to absolve an indemnitee from liability for his own negligence, an exculpatory clause must be clear and unequivocal, the cases differed in their interpretation of the meaning of "clear and unequivocal." Some held that a mere promise to indemnify against all losses included those losses attributed solely to the indemnitee's negligence. See, e.g., Thomas Awning and Tent Co. v. Toby's Twelfth Cafeteria, Inc., 204 So.2d 756 (Fla. 3d DCA 1967). However, the supreme court in University Plaza Shopping Center, Inc. v. Stewart, 272 So.2d 507 (Fla. 1973), adopted the opposing view and held that to exculpate the indemnitee from liability occasioned by his own negligence, a contract must include an explicit provision to that effect. Appellees recognize the principle in University Plaza but contend the language in the exculpatory clause at issue was sufficiently clear to absolve them from all liability. We find, however, that the language in the clause was ineffective because it did not explicitly state that the camp would be absolved from liability for injuries resulting from its negligence.
The rationale for the specificity requirement enunciated in University Plaza is to ensure that the contracting party is alerted to the meaning of the exculpatory clause. Far from unequivocally informing appellant that she was releasing appellees from liability for injuries arising from their negligence, a reasonable interpretation of this provision might give the exculpatory clause quite a different meaning. By their own choice of language, appellees agreed to take reasonable precautions to assure Leigh Anne's safety. This duty to undertake reasonable care expressed in the first part of the provision would be rendered meaningless if the exculpatory clause absolved appellees from liability. We cannot ignore this language because all terms of a contract provision must be read as a whole to give every statement meaning. Mount Vernon Fire Insurance Co. v. Editorial America, 374 So.2d 1072 (Fla. 3d DCA *1147 1977); City National Bank v. Citibank, 373 So.2d 703 (Fla. 3d DCA 1979); J.C. Penney Co. v. Koff, 345 So.2d 732 (Fla. 4th DCA 1977). Construing the exculpatory clause as a whole, appellees' release from liability rests on their exercise of reasonable care to ensure Leigh Anne's safety and good health. Whether appellees fulfilled this duty is a factual question which the trial court must resolve.
Appellant raises several other points, but since the court based its summary judgment on the validity of the exculpatory clause, we have directed our discussion to that basic issue. Two points, however, deserve passing comment. First, appellant's contention that the exculpatory clause was unenforceable due to the unequal bargaining position of the parties, is, as the trial court held, without merit. Second, the issue now raised by appellant that she lacked capacity to waive her daughter's cause of action was not before the trial court. Consequently, under accepted principles of appellate review, we cannot consider it. Paul v. Kanter, 155 So.2d 402 (Fla. 3d DCA 1963).
We vacate the summary judgment and remand the case for further proceedings consistent with this opinion.
OTT and RYDER, JJ., concur.