Richard J. MOORE, Appellant

v.

Terrell WALLER and Square 345 Limited Partnership t/a Grand Hyatt Hotel, Appellees.

No. 05–CV–695.

District of Columbia Court of Appeals.

Argued June 20, 2006.

Decided Aug. 2, 2007.

John P. Fatherree, Arlington, VA, for appellant.

Terrell Waller, pro se.

Rocco P. Porreco, New York City, for appellee, Square 345 Limited Partnership.

Before GLICKMAN, KRAMER, and FISHER, Associate Judges.

FISHER, Associate Judge:

Appellant Richard Moore claims that he was injured on February 26, 2001, while participating in a demonstration of kick boxing at Club Fitness, which is operated by the appellee, Square 345 Limited Partnership (hereinafter Grand Hyatt). Relying on a waiver and release of liability Moore signed when he joined the fitness center, the Superior Court granted summary judgment, first for Grand Hyatt and then for Terrell Waller, the instructor who allegedly injured Moore. We affirm.

## I.

Plaintiff Moore alleged that he had gone to the fitness center on February 26, 2001, to exercise. Although "he was not participating in the kick boxing classes, the in-

structor, defendant Waller, asked [Moore] to hold ... a detached Everlast body bag, so [Mr.] Waller could demonstrate a kick to his class." According to Mr. Moore, he "reluctantly agreed, saying to [Mr. Waller], 'Not hard.' Defendant Waller showed [Mr. Moore] how to hold the bag, braced against his body, and then kicked the bag five times, in rapid succession, with great force." He claims that when Waller finished, "he was out of breath from the strenuous effort, and commented with obvious sarcasm and irony, 'That wasn't hard, was it.'" Moore states that he "immediately felt trauma to his body," felt "stiff and achy" the next day, and consulted a physician about one month later. Mr. Moore asserts that "[h]e has been diagnosed as having torn ligaments and tendons from the trauma of the injury, and may have neurological damage, as well." The resulting limitations on his physical activity allegedly have diminished the quality of his life in specified ways.

Mr. Moore had joined the fitness center on January 16, 2001, signing a membership agreement and initialing that portion of the agreement that purports to be a waiver and release of liability.

Article V—WAIVER AND LIABILITY

*Section 1.* The Member hereby acknowledges that attendance at or use of the Club or participation in any of the Club's activities or programs by such Member, including without limitation, the use of the Club's equipment and facilities, ... exercises (including the use of the weights, cardiovascular equipment, and apparatus designed for exercising), [and] selection of exercise programs, methods, and types of equipment, ... could cause injury to the Member or damage to the Member's personal property. As a material consideration for the Club to enter into this Agreement, to grant membership privileges hereunder and to permit the Member and the Member's guests to use the Club and its facilities, the Member, on its own behalf and on behalf of the Member's guests, agrees to assume any and all liabilities associated with the personal injury, death, property loss or other damages which may result from or arise out of attendance at or use of the Club or participation in any of the Club's programs or activities, notwithstanding any consultation on any exercise programs which may be provided by employees of the Club.

By signing this Agreement, the Member understands that the foregoing waiver of liability on its behalf and on the behalf of the Member's guests will apply to any and all claims against the Club and/or its owners, shareholders, officers, directors, employees, agents or affiliates ... for any such claims, demands, personal injuries, costs, property loss or other damages resulting from or arising out of any of foregoing risks at the Club, the condominium or the associated premises.

The Member hereby, on behalf of itself and the Member's heirs, executors, administrators, guests and assigns, fully and forever releases and discharges the Club and the Club affiliates, and each of them, from any and all claims, damages, demands, rights of action or causes of action, present or future, known or unknown, anticipated or unanticipated resulting from or arising out of the attendance at or use of the Club or their participation in any of the Club's activities or programs by such Member, including those which arise out of the negligence of the Club and/or the Club and the Club affiliates from any and all liability for any loss, or theft of, or damage to personal property, including, without limitation, automobiles and the contents of lockers.

THE MEMBER, BY INITIALING BELOW, ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS WAIVER AND RELEASE AND FULLY UNDERSTANDS THAT IT IS A WAIVER AND RELEASE OF LIABILITY, AND ASSUMES THE RESPONSIBILITY TO INFORM HIS/HER GUESTS OF THE PROVISIONS OF THIS AGREEMENT._____

If effective, this provision waives and releases not only claims against the Club but also claims against its "employees [and] agents."[1]

Ruling on Grand Hyatt's motion for summary judgment, the trial court concluded:

> The Waiver and Liability section of the contract ... expresses a full and complete release of all liability for personal injury occurring in the fitness center. Moore signed an acknowledgment indicating that [he] had read and understood that he was releasing Grand Hyatt from all liability for personal injuries that he might sustain. Furthermore, there is no allegation of fraud or overreaching in the amended complaint. In the circumstances, the court finds that the waiver and release is valid and enforceable and is a complete defense for Grand Hyatt in this action.

The court later held "that the terms of the waiver ... apply equally to defendant Terrell Waller...."

## II.

This court has not often addressed the validity of exculpatory clauses in contracts. We have enforced them, however. For example, "[i]t is well settled in this jurisdiction that a provision in a bailment contract limiting the bailee's liability will be upheld in the absence of gross negligence, willful act, or fraud." *Houston v. Security Storage Co.*, 474 A.2d 143, 144 (D.C.1984). *Accord, Julius Garfinckel & Co. v. Firemen's Insurance Co.*, 288 A.2d 662, 665 (D.C.1972) ("gross negligence or willful misconduct"); *Manhattan Co. v. Goldberg*, 38 A.2d 172, 174 (D.C.1944) ("a bailee may limit his liability except for gross negligence"). We recently considered such a clause contained in a home inspection contract and concluded that it would be sufficient to waive or limit liability for negligence. *Carleton v. Winter*, 901 A.2d 174, 181–82 (D.C.2006). However, after surveying "leading authorities" and cases from other jurisdictions, we recognized that "courts have not generally enforced exculpatory clauses to the extent that they limited a party's liability for gross negligence, recklessness or intentional torts." *Id.* at 181. *See also Wolf v. Ford*, 335 Md. 525, 644 A.2d 522, 525 (1994) ("a party will not be permitted to excuse its liability for intentional harms or for the more extreme forms of negligence, i.e., reckless, wanton, or gross"); *Seigneur v. National Fitness Institute, Inc.*, 132 Md.App. 271, 752 A.2d 631, 638 (Ct.Spec.App.2000) (exculpatory clause will not be enforced "when the party protected by the clause intentionally causes harm or engages in acts of reckless, wanton, or gross negligence"). In *Carleton*, the court remanded for further proceedings to determine whether the conduct of the defendants "was not just simple negligence, but rather gross negligence." 901 A.2d at 182.

As Moore's counsel conceded at oral argument, he does not claim that Waller intentionally or purposefully injured

---

1. We assume for purposes of analysis that the Grand Hyatt is responsible for the conduct of Mr. Waller at issue here, but we need not determine whether he was an employee or an independent contractor.

him. The complaint does allege reckless conduct, however,[2] and he argued to the trial court, as he does to us, that the fitness center could not exempt itself from liability for reckless or wanton behavior or gross negligence. Nevertheless, the defendants had moved for summary judgment, and "[m]ere conclusory allegations on the part of the non-moving party are insufficient to stave off the entry of summary judgment." *Musa v. Continental Insurance Co.*, 644 A.2d 999, 1002 (D.C. 1994); *see also* Super. Ct. Civ. R. 56(e) ("the ... response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial"). " '[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Brown v. George Washington Univ.*, 802 A.2d 382, 385 (D.C.2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). " 'The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].' " *LaPrade v. Rosinsky*, 882 A.2d 192, 196 (D.C.2005) (quoting *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505).

Nothing Moore presented in opposition to summary judgment would be sufficient to prove gross negligence or reckless conduct. Indeed, in one of his affidavits Mr. Moore stated that "as I was shown by defendant Waller exactly how to hold the body bag while he demonstrated his kick(s), the purpose of his directions as communicated to me as to how to hold the bag were plainly for safety." Such concern for safety is inconsistent with recklessness or gross negligence. *See generally In re Romansky*, 825 A.2d 311, 316 (D.C.2003) (defining "recklessness"); *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C.1997) (defining "gross negligence") for purposes of D.C.Code § 2–412 (2001) (formerly D.C.Code § 1–1212 (1981)). Moreover, Moore did not allege that defendant Waller kicked an unprotected portion of his body. Nor did he proffer expert testimony suggesting that the demonstration was so hazardous that it was reckless to undertake it, even with the protection of the Everlast body bag.

■ Because there is no viable claim for gross negligence, recklessness, or an intentional tort, we turn to the question of whether this particular contractual provision is sufficient to bar claims for negligence.[3] Although this is a suit for person-

2. In his second amended complaint, Moore alleged that "defendant Waller recklessly disregarded [his] duty of due care [and] acted with deliberate indifference to the likelihood that his action would injure the plaintiff. Defendant Waller's reckless action was the direct and proximate cause of plaintiff's injuries." He also alleged that the Grand Hyatt was responsible for Waller's actions.

3. Appellant's brief explains that he "claims damages from Waller based upon negligent infliction of injury, and against Square 345 Limited Partnership based upon respondeat superior and upon apparent agency and authority, as well as negligent failure to properly select, train and supervise a person whose services were retained to provide lessons in

an activity which would certainly be dangerous if not expertly and responsibly performed." He later elaborates: "While kick boxing is an inherently dangerous activity, had the demonstration been conducted in a responsible, non-negligent way, it would not have been dangerous." The words "strict liability" appear under the caption of the second amended complaint, but appellant has not cited any statute or regulation that purports to impose strict liability on demonstrations of kick boxing, nor has he alleged the common law elements of strict liability in tort. *See Word v. Potomac Electric Power Co.*, 742 A.2d 452, 459 (D.C.1999). Neither has he proffered facts which would support such a theory. In sum, the waiver is sufficient to

al injury, not merely for economic damage, the same principles of law apply. *See Wright v. Sony Pictures Entertainment, Inc.*, 394 F.Supp.2d 27, 34 (D.D.C.2005) ("by voluntarily signing the Contestant Release Form, plaintiff waived his right to bring any claims for negligently caused personal injury"; applying District of Columbia law). This court has not previously considered the effect of an exculpatory clause in a membership agreement with a health club or fitness center, but many jurisdictions have done so. After surveying the legal landscape, the Maryland Court of Special Appeals concluded that most courts hold "that health clubs, in their membership agreements, may limit their liability for future negligence if they do so unambiguously." *Seigneur*, 752 A.2d at 636. We have found the analysis in *Seigneur* to be very helpful.

A fundamental requirement of any exculpatory provision is that it be clear and unambiguous. *Maiatico v. Hot Shoppes, Inc.*, 109 U.S.App. D.C. 310, 312, 287 F.2d 349, 351 (1961) ("exculpation must be spelled out with such clarity that the intent to negate the usual consequences of tortious conduct is made plain"; also recognizing that in most circumstances modern law "permit[s] a person to exculpate himself by contract from the legal consequences of his negligence"). *Cf. Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 686 A.2d 298, 305 (1996) ("Because it does not clearly, unequivocally, specifically, and unmistakably express the parties' intention to exculpate the respondent from liability resulting from its own negligence, the clause is insufficient for that pur-

pose."). The provision at issue here meets the requirement of clarity. Article V is entitled, in capital letters, "WAIVER AND LIABILITY." The Article ends with a prominent "box" containing a sentence typed in capital letters. Appellant Moore initialed that box, verifying that he had "carefully read this waiver and release and fully understands that it is a waiver and release of liability...." By accepting the terms of membership, Moore "agree[d] to assume any and all liabilities associated with the personal injury, death, property loss or other damages which may result from or arise out of attendance at or use of the Club or participation in any of the Club's programs or activities...." He understood that this waiver of liability would "apply to any and all claims against the Club and/or its owners, shareholders, officers, directors, employees, agents or affiliates ... for any ... personal injuries ... resulting from or arising out of any of [the] foregoing risks at the Club...." He "release[d] and discharge[d] the Club ... from any and all claims, damages, demands, rights of action or causes of action ..., including those which arise out of the negligence of the Club...." This release is conspicuous and unambiguous, and it is clearly recognizable as a release from liability. Moreover, the injuries alleged here were reasonably within the contemplation of the parties. "Because the parties expressed a clear intention to release liability and because that release clearly included liability for negligence, that intention should be enforced." *Anderson v. McOskar Enterprises, Inc.*, 712 N.W.2d 796, 801 (Minn.Ct.App.2006) (health and fitness club).[4]

cover any theory of liability which is supported by more than conclusory allegations.

4. Because this waiver expressly refers to "claims ... which arise out of the negligence of the Club," its effect is clear. We have held, however, that it is not always necessary to use

the word "negligence" in order to relieve a party of liability for such conduct. *See Princemont Construction Corp. v. Baltimore & Ohio R.R. Co.* 131 A.2d 877, 878 (D.C.1957) ("the terms of an indemnity agreement may be so broad and comprehensive that although

Appellant protests that the waiver provisions are so broad that they could be construed to exempt the Club from liability for harm caused by intentional torts or by reckless or grossly negligent conduct. Because such provisions are unenforceable, he argues that the entire release is invalid. We disagree. " 'A better interpretation of the law is that any "term" in a contract which attempts to exempt a party from liability for gross negligence or wanton conduct is unenforceable, not the entire [contract].' " *Anderson,* 712 N.W.2d at 801 (quoting *Wolfgang v. Mid–American Motorsports, Inc.,* 898 F.Supp. 783, 788 (D.Kan.1995) (which in turn quotes RESTATEMENT (SECOND) OF CONTRACTS § 195(1) (1981) (*"A term* exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy.") (emphasis added))). *See Ellis v. James V. Hurson Associates, Inc.,* 565 A.2d 615, 617 (D.C.1989) ("The Restatement sets forth the relevant principles. Where less than all of an agreement is unenforceable on public policy grounds, a court may nevertheless enforce the rest of the agreement 'in favor of a party who did not engage in serious misconduct.' " (quoting RESTATEMENT (SECOND) OF CONTRACTS § 184(1) (1981))).

▮▮ Nor is Article V (the waiver and release) unenforceable due to unequal bargaining power, as Mr. Moore asserts. We do not suppose that the parties in fact had equal power, but Moore does not meet the criteria for invalidating a contract on the grounds he invokes. He does not invite our attention to any evidence that he objected to the waiver provision or attempted to bargain for different terms. Nor has he

shown that the contract involved a necessary service.

Even though a contract is on a printed form and offered on a "take it or leave it" basis, those facts alone do not cause it to be an adhesion contract. There must be a showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation *and* that the services could not be obtained elsewhere.

*Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920, 924–25 (Minn.1982) (emphasis in original). "Health clubs do not provide essential services[,]" *Shields v. Sta–Fit, Inc.,* 79 Wash.App. 584, 903 P.2d 525, 528 (1995), and "[t]he Washington metropolitan area ... is home to many exercise and fitness clubs." *Seigneur,* 752 A.2d at 639 (rejecting argument that patron's bargaining position was grossly disproportionate to that of the fitness club).

We, of course, would not enforce such a release if doing so would be against public policy. *See Godette v. Estate of Cox,* 592 A.2d 1028, 1034 (D.C.1991) ("An exculpatory clause [in a will] that excuses self-dealing [by the personal representative] or attempts to limit liability for breaches of duty committed in bad faith, intentionally, or with reckless indifference to the interest of the beneficiary, is generally considered to be against public policy."); *George Washington Univ. v. Weintraub,* 458 A.2d 43, 47 (D.C.1983) (exculpatory clause in lease was ineffective to waive tenants' rights under implied warranty of habitability); *see also Wolf v. Ford,* 335 Md. 525, 644 A.2d 522, 526 (1994) (public policy will not permit exculpatory agreements in certain transactions affecting the performance of a public service obligation or "so impor-

it contains no express stipulation indemnifying against a party's own negligence, it accomplishes the same purpose"); *see also Avant v. Community Hospital,* 826 N.E.2d 7,

12 (Ind.Ct.App.2005)("an exculpatory clause need not include the word 'negligence' so long as it conveys the concept specifically and explicitly through other language").

tant to the public good that an exculpatory clause would be patently offensive"). However, we agree with the Maryland Court of Special Appeals and with numerous other courts which have held that it does not violate public policy to enforce exculpatory clauses contained in membership contracts of health clubs and fitness centers. *Seigneur,* 752 A.2d at 640–41 (and cases cited therein); *see also, e.g., Schlobohm,* 326 N.W.2d at 926 ("the exculpatory clause in the contract before us was not against the public interest"); *Ciofalo v. Vic Tanney Gyms, Inc.,* 10 N.Y.2d 294, 220 N.Y.S.2d 962, 177 N.E.2d 925, 927 (1961) ("there is no special legal relationship and no overriding public interest which demand that this contract provision, voluntarily entered into by competent parties, should be rendered ineffectual"); *Massengill v. S.M.A.R.T. Sports Medicine Clinic, P.C.,* 996 P.2d 1132 (Wyo.2000).[5]

The trial court properly held that "the waiver and release is valid and enforceable and is a complete defense for Grand Hyatt [and Mr. Waller] in this action." The judgment of the Superior Court is hereby

*Affirmed.*

---

5. The Supreme Court of Wisconsin refused to enforce one such clause on grounds of public policy. *Atkins v. Swimwest Family Fitness Center,* 277 Wis.2d 303, 691 N.W.2d 334 (2005). That decision was based on several factors, however, and we do not understand the court to have announced a categorical rule. *See id.* at 340–42 (waiver was "overly broad and all-inclusive," the word "negligence" was not included, the provision was not "sufficiently highlight[ed]," and there was "no opportunity to bargain").