Jacqueline BROWN, Appellant

v.

1301 K STREET LIMITED PARTNER-
SHIP and Hines Interests Limited
Partnership, Appellees.

No. 09–CV–695.

District of Columbia Court of Appeals.

Submitted June 29, 2010.

Decided Nov. 23, 2011.

Frank R. Kearney, Washington, DC, was on the brief for appellant.

Ali A. Beydoun, Washington, DC, was on the brief for appellees.

Before BLACKBURNE–RIGSBY, Associate Judge, and TERRY and FARRELL, Senior Judges.

TERRY, Senior Judge:

This appeal arises from a personal injury action brought by appellant Jacqueline Brown against the two appellees, 1301 K Street Limited Partnership ("1301 K Street") and Hines Interests Limited Partnership ("Hines"). Ms. Brown alleged in her complaint that appellees were liable for injuries she sustained when she slipped on a wet floor while working as a security guard in a building owned by 1301 K Street and managed by Hines. The trial court granted summary judgment to appellees, noting that Ms. Brown had signed a disclaimer shielding appellees from liability and ruling that this disclaimer barred her claim. Ms. Brown now appeals from that judgment, contending that disputed issues of material fact call into question the validity of the disclaimer and its applicability to appellees. We hold that the trial court correctly interpreted the disclaimer and committed no error in granting summary judgment. Accordingly, we affirm that judgment in all respects.

I

Ms. Brown's complaint alleged that her injury occurred on February 21, 2005, while she was working as a security guard for Allied Barton Security in a building located at 1301 K Street, Northwest. She filed a claim for workers' compensation and in due course settled that claim with Allied Barton and its insurance carrier. She received a "Lump Sum Settlement Pursuant to Section 32–1508"[1] on October 21, 2008. She then brought the present action against 1301 K Street, the building's owner, and Hines, the property manager. She alleged that her injury was the result of the defendants' (1) negligence, (2) violation of the federal Occupational Safety and Health Act ("OSHA"), and (3) violation of the District of Columbia Industrial Safety Act ("Safety Act").[2]

Hines and 1301 K Street moved for summary judgment, asserting that a disclaimer which Ms. Brown had signed in January 2005, when she first went to work for Allied Barton, shielded them both from liability. That disclaimer stated in part:

I understand that state Workers' Compensation statutes cover work-related injuries that may be sustained by me. . . . As a result, and in consideration of Allied Security offering me employment, I hereby waive and forever release any and all rights I may have to:

—make a claim, or

—commence a lawsuit, or

—recover damages or losses

from or against any customer (and the employees of any customer) of Allied Security to which I may be assigned, arising from or related to injuries which are covered under the Workers' Compensation statutes.

Allied Barton's relationship with Hines and 1301 K Street began in September 2000, upon the execution of a "Building Services Contract," which stated that "Barton Protective Services" would provide security for the premises at 1301 K Street, Northwest. On May 17, 2004, Barton Protective Services and Allied Security announced in a press release that they were merging, but that they "anticipate[d] operating under their separate names" in a

---

1. This is a reference to a section of the District of Columbia Workers' Compensation Act.

2. D.C.Code §§ 32–801 et seq. (2001).

"strategic combination." On May 18, 2004, one day after the press release, Barton extended its contract to provide security at the K Street building until March 30, 2006, by executing a "Third Amendment to Building Services Contract." This Third Amendment was signed by a representative from Barton and by Mark A. Smith, whom the agreement listed as a representative both of 1301 K Street and of Hines. Finally, on January 24, 2005, Allied filed a prospectus with the Securities and Exchange Commission outlining its acquisition of Barton, which had been completed on August 2, 2004.

The foregoing facts were established through discovery. After a hearing on appellees' motion for summary judgment, the trial court granted the motion. This appeal followed.

## II

■ This court reviews the granting of motions for summary judgment *de novo*, undertaking the same analysis that the trial court performed in considering the motion in the first instance. *Anthony v. Okie Dokie, Inc.*, 976 A.2d 901, 904 (D.C. 2009); *District of Columbia v. District of Columbia Public Service Comm'n*, 963 A.2d 1144, 1155 (D.C.2009). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *see, e.g., Colbert v. Georgetown University*, 641 A.2d 469, 472 (D.C.1994) (en banc).

### A. *The Validity of the Disclaimer*

■ Ms. Brown asserts that the disclaimer is invalid because it is an agreement to forego her right to compensation under the District of Columbia Workers' Compensation Act ("WCA"), specifically citing D.C.Code §§ 32–1516(b) and 32–1517 (2001). We reject this argument. Section 32–1516(b) merely states: "No agreement by an employee to waive his right to compensation *under this chapter* [*i.e.*, the WCA] shall be valid" (emphasis added). Section 32–1517 similarly provides: "No assignment, release, or commutation of compensation or benefits due or payable *under this chapter* ... shall be valid" (emphasis added). The disclaimer at issue here did not purport to limit in any way Brown's right to compensation "under this chapter"—*i.e.*, under the WCA. On the contrary, the disclaimer contemplates that the WCA will be the exclusive vehicle for obtaining compensation for "injuries which are covered under the Workers' Compensation statutes." Any right that Ms. Brown may have to file an action in tort against a third party, such as Hines or 1301 K Street, is not based on or derived from the WCA, and therefore any agreement she made waiving her right to bring a civil action was not a limitation on any right she may have had under the WCA.

Ms. Brown's reliance on *Meiggs v. Associated Builders, Inc.*, 545 A.2d 631 (D.C. 1988), is misplaced. In that case, in which an employee of a subcontractor was injured, we held that the general contractor was not an "employer" for the purposes of that section of the WCA which gives immunity in tort to employers once the employee has brought a successful WCA claim. *Id.* at 634. At most, *Meiggs* stands for the proposition that a third party is not protected from tort liability by the provisions of the WCA. *Meiggs* did not purport to invalidate disclaimers or waivers signed by employees that limit recovery in tort against third parties. In the present case, "[b]ecause the parties expressed a clear intention to release liability and because that release clearly included liability for

[all tort causes of action], that intention should be enforced." *Moore v. Waller*, 930 A.2d 176, 181 (D.C.2007) (citation omitted).

Ms. Brown asserts that the disclaimer is "at best, a general release, and invalid." She focuses on the "any customer of Allied Security" language in the disclaimer and cites our decision in *Noonan v. Williams*, 686 A.2d 237 (D.C.1996), but *Noonan* does not support her argument. *Noonan* establishes that District of Columbia courts follow certain aspects of both the "flat bar" and the "intent" rules of construing releases, holding that "a release which is facially unambiguous is the best measure of the parties' actual intent," but that courts can resort to "extrinsic evidence if the terms of a release are not clear on the face of the document itself." *Id.* at 244. In *Noonan* the appellant was a passenger in a taxicab that collided with another car. The appellant executed a release with the cab driver and the cab company which, by its plain language, purported to release "all other persons" from liability. Seizing on this broad language, the driver of the other car (Williams) sought to enforce the release against Noonan. But even in that case, in which the language appeared to release "all other persons," we did not deem the agreement "invalid," as Ms. Brown seems to assert. Rather, we simply proceeded to the second step of the analysis, examining extrinsic evidence to determine whether the parties actually intended to release Mr. Williams from liability. *See id.* at 244–245.

■ In the case at bar, that second step is not necessary because the parties' intent is clear from the face of the disclaimer. The plain language limits its application to Allied's "customers" and their employees. The disclaimer makes clear that part of the consideration which the employer (Allied) was receiving in exchange for offering employment to Ms. Brown was her assurance that, if she were injured while on the job, she would seek only the remedies available under the WCA and would not sue Allied's valued customers. "If the release is facially unambiguous, we must rely solely upon its language as providing the best objective manifestation of the parties' intent." *Bolling Federal Credit Union v. Cumis Insurance Society*, 475 A.2d 382, 385 (D.C.1984). That is what we do here.[3]

■ Ms. Brown also argues that the disclaimer should not be enforced because it is against public policy. To support this argument, she cites *Moore v. Waller*, in which we held that a release from liability signed as part of a gym membership did not violate public policy. 930 A.2d at 183. In so holding, we observed that we "would not enforce such a release if doing so would be against public policy." *Id.* at 182. However, in this case as in *Moore*, there is nothing in the record to suggest that we should expand the narrow class of releases deemed violative of public policy to include the disclaimer at issue. On public policy grounds, we have invalidated an exculpatory clause in a will that excused self-dealing by the personal representative and attempted to limit liability for breaches of duty committed in bad faith, intentionally, or recklessly. *Godette v. Estate of*

---

3. Ms. Brown has not demonstrated that even if extrinsic evidence were relied upon to determine intent, it would show that the parties intended to allow her to sue these appellees. The only piece of evidence on which Brown relies to show the employer's intent contrary to the plain language of the disclaimer is Allied Barton's statement that "employer/car-rier will retain its rights of subrogation with respect to Claimant's third party case" in the "lump sum settlement" document which resolved her workers' compensation claim. The employer's reservation of its right to subrogation under the WCA, should Brown succeed on any third party claim, surely does not establish its approval of such a claim.

*Cox,* 592 A.2d 1028, 1034 (D.C.1991). We have also invalidated an exculpatory clause in a lease that excused the landlord's obligations under the implied warranty of habitability. *George Washington University v. Weintraub,* 458 A.2d 43, 47 (D.C.1983). In this case, by contrast, we find nothing violative of public policy in an employer's choice to protect its customers from liability for workplace injuries, choosing instead to compensate its employees itself exclusively through workers' compensation. *See Moore,* 930 A.2d at 183 ("there is ... no overriding public interest which demand[s] that this contract provision, voluntarily entered into by competent parties, should be rendered ineffectual" (citation omitted)).[4]

Ms. Brown asserts specifically that the disclaimer violates public policy because it purports to limit liability for violations of statutorily based duties of care, referring to her OSHA and Safety Act claims. She points out that at common law disclaimers of strict liability were not enforceable. *See Potomac Plaza Terraces, Inc. v. QSC Products, Inc.,* 868 F.Supp. 346, 355 (D.D.C.1994); Restatement (Second) of Torts § 402A, comment m (1965). This court has taken note of that common law principle, distinguishing strict liability claims from claims of breach of an implied warranty by referring to issues regarding such matters as "disclaimer" and "notice" as "issues unique to warranty," as opposed to strict liability. *See Payne v. Soft Sheen Products, Inc.,* 486 A.2d 712, 720 (D.C. 1985); *see also Bowler v. Stewart–Warner*

*Corp.,* 563 A.2d 344, 346 (D.C.1989) (citing *Payne* and noting its reference to the Restatement).

■ However, even assuming that this jurisdiction adheres to the common law rule, that principle does not apply *per se* to releases from liability for duties derived from statutes such as OSHA or the Safety Act, and we decline to adopt such a rule in this case. The Safety Act "is not a strict liability statute," but rather "imposes 'a statutory duty of due care.'" *Velasquez v. Essex Condominium Ass'n,* 759 A.2d 676, 681 (D.C.2000) (citation omitted). Thus, in any case in which "the injured party comes within the protection of the statute ... it is still necessary to determine the scope of the duty of due care under the statute and the reasonableness of defendant's actions." *Id.* This makes actions brought under the Safety Act analogous to negligence actions, not to actions based on strict liability, for the purposes of determining the validity of a disclaimer. The same reasoning can be applied to Brown's OSHA claim. We have held that "evidence of code violations, especially of those with the public safety as an objective, are evidence of negligence." *Jimenez v. Hawk,* 683 A.2d 457, 461 (D.C. 1996). We have further held that for plaintiffs not directly protected by OSHA—because they are not direct employees of the defendant—OSHA's regulations can nevertheless be considered as some evidence of the standard of care owed by the defendant. *Thoma v. Kettler Bros., Inc.,* 632 A.2d 725, 730 (D.C.1993).

---

4. Ms. Brown suggests in passing that the disclaimer is suspect because she signed it along with twenty other documents, without a specific understanding of its contents, since it was required in order for her to obtain employment with Allied Barton. We have declined in the past to invalidate contracts merely because they are "on a printed form and offered on a 'take it or leave it' basis." *Moore,* 930 A.2d at 182 (citing *Schlobohm v.*

*Spa Petite, Inc.,* 326 N.W.2d 920, 924–925 (Minn.1982)). Before such a contract may be deemed invalid, "[t]here must be a showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation *and* that the services could not be obtained elsewhere." *Id.* (emphasis in original). No such showing has been made or attempted here.

Although releases purporting to limit liability for gross negligence, willful acts, or fraud will not be enforced, releases are viable and enforceable when they limit liability for ordinary negligence. *See Moore,* 930 A.2d at 179 (citing cases). Since OSHA and the local Safety Act do not impose strict liability but rather serve to establish standards of care, and since there is no allegation that a violation of these statutes would constitute gross negligence, willfulness, or fraud, we see no reason why, as a general matter, parties should not be able to release claims of liability based upon these statutes.

## B. *The Disclaimer's Applicability to 1301 K Street and Hines*

■ Ms. Brown argues that even if the disclaimer is enforceable as a general matter, it is not applicable to these appellees in particular. She contends that because the disclaimer only purports to bar suits against customers of "Allied Security," it cannot bar her suit because she was an employee only of Allied Barton, and appellees were customers only of Barton. The evidence shows, however, that at all times relevant to Brown's claim, Allied and Barton were the same entity. The press release and the prospectus filed with the SEC establish that Allied's acquisition of Barton was complete as of August 2, 2004, five months before Ms. Brown became an employee of the security company. At the time she signed the disclaimer and at the time of her injury, therefore, the compa-

nies were in fact a single entity known as "Allied Barton Security," whose customers were all protected under the agreement that Ms. Brown signed as a new employee in January 2005. This is true notwithstanding the fact that at various times after the merger the two companies may have operated under their separate business names, as anticipated in the press release.[5]

Ms. Brown also contends that the trial court erred in determining that Hines and 1301 K Street were effectively the same entity. She maintains that even if 1301 K Street was a customer of Allied Barton, Hines was not. Ms. Brown may be correct in her assertion that this fact is disputed. Hines and 1301 K Street had a contract that characterized their relationship as "not one of general agency between Manager and Owner, but one in which Manager is engaged independently in the business of managing properties on its own behalf as an independent contractor...." The existence and wording of this contract may at least cast doubt on whether the two entities were, for all purposes, one and the same.

■ We need not decide this point, however, because this is not an issue of material fact. "A genuine issue of material fact exists if the record contains 'some significant probative evidence ... so that a reasonable fact-finder would return a verdict for the non-moving party.'" *1836 S Street Tenants Ass'n v. Estate of Battle,*

5. Ms. Brown could reasonably be charged with knowing that "customers of Allied" included any customers of the former "Barton," since she asserts that she understood herself to be an employee of Barton, while the disclaimer she signed in January 2005 referred to "any customer ... of Allied Security to which I may be assigned" and informed her that her medical treatment from workplace injuries would be paid for by "Allied's" insurance carrier. Further, in the "lump sum set-tlement" document which Brown received from the Department of Employment Services in October 2008—before she filed this civil action—Brown's employer is identified as "Allied Barton Security." In any event, Ms. Brown's subjective belief is not controlling. Even if she did not know of the merger or any of its details, the disclaimer entitled Allied Barton's "customers" to protection, and at the time of the injury both Hines and 1301 K Street were "customers" of Allied Barton.

965 A.2d 832, 836 (D.C.2009) (footnote omitted). "A material fact is one which, under the applicable substantive law, is relevant and may affect the outcome of the case." *Rajabi v. Potomac Electric Power Co.*, 650 A.2d 1319, 1321 (D.C.1994). In the present case, a determination that Hines and 1301 K Street were not the same entity would not affect the outcome because, in any event, they were both customers of Allied Barton.

While the May 2004 "Third Amendment to Building Services Contract" states that the contract for security services exists "between 1301 K Street Limited Partnership ... and Barton Protective Services," it is clear that Hines was intimately associated with that agreement, if not an explicit party to it. The signature page identifies the two parties as "contractor" (Barton) and "owner," with "owner" noted as being represented by both 1301 K Street and Hines. The cover page of the Third Amendment identifies four entities: Project, Contractor, Owner (1301 K Street), and Manager (Hines). 1301 K Street asserted, in its answers to interrogatories, that the Building Services Contract existed "between Hines and Barton for the benefit of 1301 K Street Limited Partnership." Hines by implication conceded the same thing when it failed to object to the wording of a question in an interrogatory that asked about "the Building Services Contract created between Barton and Hines Interests."

The record reveals additional links connecting the two appellees. First, both appellees' answers to interrogatories were prepared by the same lawyer, from the same law firm. The representative for each appellee is listed as "Tim Lowery, Property Manager, Hines Interest Limited Partnership, 1301 K Street, N.W." The contract between Hines and 1301 K Street was signed only by Jeffrey C. Hines, representing both entities, and the same person, Mark A. Smith, served as the "Authorized Representative" of both Hines and 1301 K Street in the contract between Allied Barton and 1301 K Street. Thus, even if the two companies were not officially the same entity for all purposes, they were so closely intertwined in their business transactions as to be essentially indistinguishable, at least for the purposes of the instant civil action.

The fact that the two appellees indicated in their discovery responses that Hines and Allied Barton entered into the contract for 1301 K Street's benefit comports with common sense regarding the transactions involved in owning and managing a business property. It is reasonable to expect that the owner of a building would contract for security at the building through its property manager. *See, e.g., Peachtree–Cain Co. v. McBee*, 254 Ga. 91, 327 S.E.2d 188, 191 (1985) (property owner liable for actions of independent security agency when agency was hired by property manager for owner's benefit). The answers to interrogatories, pleadings, and other documents in the record show that Hines and 1301 K Street are both, either jointly or independently, involved with the contract for security with Allied Barton; therefore, the question of whether Hines is the same company as 1301 K Street is not material.[6] *See* Super. Ct. Civ. R. 56(c). Since both entities are customers of Allied

6. The trial court appears to have based its ruling more on the involvement of both appellees with the Allied Barton contract than on the closeness of the relationship between the two appellees. After initially ruling that only 1301 K Street, and not Hines, was a party to the contract, the court reversed itself and concluded that "the contract was with 1301 K Street and Hines and others to provide, among other things, security services for the building."

Barton, the disclaimer is valid and can be enforced against Brown by both Hines and 1301 K Street. *See District of Columbia v. Campbell,* 580 A.2d 1295, 1302 (D.C. 1990) ("a promise in a contract creates a duty in the promisor to *any intended beneficiary* to perform the promise" (emphasis added)).

## III

Because there were no disputed issues of material fact, and because the disclaimer entitled appellees to judgment as a matter of law, summary judgment was appropriate. That judgment is therefore

*Affirmed.*