DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DIVESTON MERLIEN,**
Appellant,

v.

**JM FAMILY ENTERPRISES, INC., SHERIDAN 441, LLC** and **BENDLES RENTALS, LLC,**
Appellees.

No. 4D19-2911

[July 22, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Raag Singhal, Judge; L.T. Case No. CACE17-007427 21.

Neil Rose, Esq., Hollywood, and Morgan Weinstein of Weinstein Law, P.A., Fort Lauderdale, for appellant.

Kansas R. Gooden of Boyd & Jenerette, P.A., Miami, and Ian E. Waldick of Boyd & Jenerette, P.A., Jacksonville, for appellee JM Family Enterprises, Inc.

FORST, J.

Appellant Diveston Merlien ("the plaintiff") appeals from the trial court's final summary judgment entered in favor of JM Family Enterprises ("JM"). The trial court found that the plaintiff's negligence lawsuit was precluded by an exculpatory clause in his employment agreement. On appeal, the plaintiff argues that the disclaimer at issue was void for ambiguity and, even if the disclaimer was properly considered and not void for ambiguity, it was nevertheless unenforceable because it contravenes Florida public policy. We disagree and affirm.[1]

---

[1] The plaintiff also claims the motion for summary judgment should have been dismissed on procedural grounds, contending that the disclaimer proffered to the trial court was unauthenticated hearsay. Below, the plaintiff failed to timely and properly object to JM's filing of an affidavit prepared for the purpose of authenticating the disclaimer. Nor did he challenge the adequacy or sufficiency of the affidavit with respect to authentication. Accordingly, his arguments on appeal are not preserved, and we find that the trial court did not err by

## Background

The plaintiff was employed by AlliedBarton, a firm that provides security services for various clients. He was assigned to work as a security guard for one of those clients, JM The plaintiff was allegedly injured due to a slip and fall on stairs at the JM facility where he was assigned to work. He subsequently filed a premises liability suit against JM, alleging that his slip and fall was proximately caused by JM's negligent maintenance of the stairs.

The primary focus of this appeal is the enforceability of a waiver which the plaintiff signed as a condition of employment that prohibits suit against any customer of AlliedBarton for injuries covered by the workers' compensation statutes. The waiver provides:

WORKER'S COMPENSATION DISCLAIMER
Payment on Work-Related Injuries

I understand that state Workers' Compensation statues [sic] cover work-related injuries that may be sustained by me. If I am injured on the job, I understand that I am required to notify my manager immediately. The manager will inform me of my state's Workers' Compensation law as it pertains to seeking medical treatment. This is to assure that reasonable medical treatment for an injury will be paid for by Alliedbarton's [sic] Workers' Compensation insurance.

As a result, and in consideration of AlliedBarton Security Services offering me employment, I hereby waive and forever release any and all rights I may have to:
- make a claim, or
- commence a lawsuit, or
- recover damages or losses

from or against any customer (and the employees of any customer) of AlliedBarton Security Services to which I may be

---

considering the disclaimer during the summary judgment proceedings. *See Schroeder v. MTGLQ Inv'rs, L.P.*, 290 So. 3d 93, 96 (Fla. 4th DCA 2020) ("[T]o be preserved for appeal, the specific legal ground upon which a claim is based must be raised at trial and a claim different than that will not be heard on appeal." (quoting *Aills v. Boemi*, 29 So. 3d 1105, 1109 (Fla. 2010) (internal quotation marks omitted))).

assigned, arising from or relating to injuries which are covered under the Workers' Compensation statues [sic].

Two years after the plaintiff filed his complaint, JM filed a motion for summary judgment, arguing that the plaintiff waived his right to bring suit by executing the above waiver at the commencement of his employment. After hearing argument from both parties, the trial court granted JM's motion for summary judgment. This timely appeal followed.

**Analysis**

"The standard of review of an order granting summary judgment is de novo." *Fini v. Glascoe*, 936 So. 2d 52, 54 (Fla. 4th DCA 2006). When "the enforceability of [a] pre-injury release is a question of law arising from undisputed facts, the standard of review is de novo." *Kirton v. Fields*, 997 So. 2d 349, 352 (Fla. 2008).

*Brooks v. Paul,* 219 So. 3d 886, 887 (Fla. 4th DCA 2017); *see also Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256, 260 (Fla. 2015) ("The enforceability of a pre-injury exculpatory clause arising from undisputed facts is reviewed de novo.").

I.   *Whether the disclaimer was ambiguous and unenforceable.*

"Public policy disfavors exculpatory contracts because they relieve one party of the obligation to use due care. . . . Nevertheless, because of a countervailing policy that favors the enforcement of contracts, as a general proposition, unambiguous exculpatory contracts are enforceable unless they contravene public policy." *Sanislo*, 157 So. 3d at 260 (internal citations omitted).

Florida courts have upheld the enforceability of exculpatory provisions in contracts only when the language of the provision clearly and unambiguously communicates the scope and nature of the disclaimer. *See id.* at 260–61; *Fresnedo v. Porky's Gym III, Inc.*, 271 So. 3d 1185, 1186 (Fla. 3d DCA 2019); *Brooks*, 219 So. 3d at 888. "Such provisions are deemed to be unambiguous and enforceable when the language unequivocally demonstrates a clear and understandable intention for the defendant to be relieved from liability such that an ordinary and knowledgeable person will know what he or she is contracting away." *Pillay v. Pub. Storage, Inc.*, 284 So. 3d 566, 569 (Fla. 4th DCA 2019) (citing *Sanislo,* 157 So. 3d at 260-61).

In addressing the trial court's determination that the AlliedBarton release was clear and unambiguous, the plaintiff cites to *UCF Athletics Ass'n Inc. v. Plancher*, 121 So. 3d 1097 (Fla. 5th DCA 2013), *quashed in part on other grounds*, 175 So. 3d 724 (Fla. 2015), and argues that the waiver at issue in that case is analogous to AlliedBarton's current disclaimer. We disagree and find the case to be distinguishable.

In *Plancher,* the parents of a University of Central Florida football player brought a negligence action against the university after their son collapsed and died during conditioning drills during practice. *Id.* at 1099. In affirming the decision of the trial court, the Fifth District found the exculpatory clause contained in "the agreement to participate clause of the Medical Examination and Authorization Waiver" to be ambiguous and unenforceable. *Id.* at 1099, 1103.

In pertinent part, the exculpatory clause at issue in *Plancher* contained the following language:

> I recognize the importance of following all instructions of the coaching staff, strength and conditioning staff, and/or Sports Medicine Department. Furthermore, I understand that the possibility of injury, including catastrophic injury, does exist even though proper rules and techniques are followed to the fullest. . . .
>
> In consideration of the University of Central Florida Athletic Association, Inc. permitting me to participate in intercollegiate athletics and to engage in all activities and travel related to my sport, I hereby voluntarily assume all risks associated with participation and agree to exonerate, save harmless and release the University of Central Florida Athletic Association, Inc., its agents, servants, trustees, and employees from any and all liability, any medical expenses not covered by the University of Central Florida Athletic Association's athletics medical insurance coverage, and all claims, causes of action or demands of any kind and nature whatsoever which may arise by or in connection with my participation in any activities related to intercollegiate athletics.
>
> The terms hereof shall serve as release and assumption of risk for my heirs, estate, executor, administrator, assignees, and all members of my family.

*Id.* at 1100-01. The Fifth District explained its determination that the

4

release language was ambiguous, and the release was thus unenforceable:

> This preamble, when coupled with a clause that does not expressly state that [the decedent] would be waiving a negligence action, could have easily led [the decedent] to believe that UCFAA would be supervising his training and instructing him properly (non-negligently), and that he was only being asked to sign the exculpatory clause to cover injuries inherent in the sport-that could occur "even though proper rules and techniques are followed to the fullest."

*Id.* at 1102.

The ruling in *Plancher* is similar to the rulings of two other cases cited in the plaintiff's initial brief. In *Brooks*, we invalidated an exculpatory clause in an agreement between a surgeon and patient because the language was unclear and ambiguous. 219 So. 3d at 891. In so holding, we explained that the release was unenforceable because the disclaimer was "qualified" by the statement that the surgeon would "do the very best to take care of [the patient] according to community medical standards"; this rendered the "purported release" contradictory and ambiguous. *Id.* We compared the release to the waiver in *Goyings v. Jack & Ruth Eckerd Foundation*, 403 So. 2d 1144 (Fla. 2d DCA 1981), *disapproved of on other grounds by Sanislo*, 157 So. 3d 256, which also included "additional language" that "create[d] ambiguity about exactly what type of claims are being released." *Brooks*, 219 So. 3d at 891. In *Goyings*, ambiguity arose in a children's camp contract in which the camp agreed to take reasonable precautions to assure the safety of the children, yet also sought to disclaim all liability. *Goyings*, 403 So. 2d at 1145-46. The court held this language to be ambiguous and contradictory because the camp "[b]y their own choice of language . . . agreed to take reasonable precautions to assure [the child's] safety." *Id.* at 1146.

The instant case is clearly distinguishable from *Plancher*, *Brooks*, and *Goyings*, as the disclaimer at issue here does not contain a misleading preamble or otherwise suggest that either AlliedBarton or its clients will take responsibility for an employee's safety when working at client facilities. The disclaimer is limited to injuries which are covered under the workers' compensation statutes and makes no promises or representations other than "state Workers' Compensation statu[t]es cover work-related injuries that may be sustained by [the employee]," and that "reasonable medical treatment for an injury will be paid for by [AlliedBarton's] Workers' Compensation insurance."

5

One other case cited by the plaintiff to support his ambiguity argument is *Tatman v. Space Coast Kennel Club, Inc.*, 27 So. 3d 108 (Fla. 5th DCA 2009). In that case, there was some ambiguity as to whether the disclaimer released claims for injuries caused by one dog to another dog and/or to a person. *Id.* at 110-11. The court faulted the waiver agreement for its failure to "define whose injuries are covered in a circumstance, even though there are multiple possibilities." *Id.*

No such ambiguity exists here, as the disclaimer specifically explains the rights released ("all rights . . . to make a claim, or commence a lawsuit, or recover damages or losses"); the beneficiaries of that release ("any customer (and the employees of any customer) of AlliedBarton Security Services to which I may be assigned"); and the situations in which this release applies ("arising from or relating to injuries which are covered under the Workers' Compensation statu[t]es"). As in *Sanislo*, the exculpatory clause here is "unambiguous and enforceable [because] the intention to be relieved from liability was made clear and unequivocal and the wording was so clear and understandable that an ordinary and knowledgeable person w[ould] know what he or she is contracting away." 157 So. 3d at 260-61.

## II. *Whether the disclaimer violates Florida public policy.*

Even waivers that are clear and unambiguous may nevertheless be unenforceable if they contravene Florida public policy. *See id.* at 260. However, "[a] contract is not void, as against public policy, unless it is injurious to the interests of the public or contravenes some established interest of society." *Griffin v. ARX Holding Corp.*, 208 So. 3d 164, 170 (Fla. 2d DCA 2016) (quoting *Atl. Coast Line R.R. Co. v. Beazley*, 45 So. 761, 785 (Fla. 1907)) (alteration omitted).

The plaintiff argues that even if AlliedBarton's disclaimer is not void for ambiguity, it should be found unenforceable based on public policy considerations. Specifically, the plaintiff argues that "part of the purpose of the workers' compensation statute is to permit negligence claims against a third-party tortfeasor—in this case the customers of AlliedBarton."

In making this argument, the plaintiff references section 440.39, Florida Statutes (2017), which provides that an employee injured in the course of his or her employment by the negligent actions of a third-party tortfeasor "may accept compensation benefits under the provisions of this law, and at the same time such injured employee . . . *may* pursue his or her remedy by action at law or otherwise against such third-party tortfeasor." § 440.39, Fla. Stat. (2017) (emphasis added).

6

The plain language of this section establishes a permissive rather than mandatory option on the part of the employee to pursue an action at law. *Agile Assurance Grp. Ltd. v. Palmer*, 147 So. 3d 1017, 1018 (Fla. 2d DCA 2014) ("Generally, use of the word *may* deems relevant language permissive."). Here, the plaintiff contracted away his right under section 440.39 to assert a claim against a third-party tortfeasor. "[B]ecause of a . . . policy that favors the enforcement of contracts, as a general proposition, unambiguous exculpatory contracts are enforceable unless they contravene public policy." *Sanislo*, 157 So. 3d at 260.

The disclaimer did not "contravene public policy." It *conforms* to public policy. Section 440.015, Florida Statutes (2017), states:

> It is the intent of the Legislature that the Workers' Compensation Law be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer. . . . The workers' compensation system in Florida is based on a mutual renunciation of common-law rights and defenses by employers and employees alike.

§ 440.015, Fla. Stat. (2017). Our Supreme Court offered a similar view:

> Fundamentally, the workers' compensation system establishes a system of exchange between employees and employers, as well as employees and insurance carriers, that is designed to promote efficiency and fairness. Our governing precedent, as well as that of our district courts, has recognized that under this no-fault system, the employee relinquishes certain common-law rights with regard to negligence in the workplace and workplace injuries in exchange for strict liability and the rapid recovery of benefits.

*Aguilera v. Inservices, Inc.*, 905 So. 2d 84, 90 (Fla. 2005).

Here, it is undisputed that the plaintiff's injury fell under the scope of the workers' compensation statutes and that he received payment for his injuries under AlliedBarton's policy. This result places the plaintiff in the same position as any AlliedBarton employee who may be injured while working directly for the employer on the employer's premises. *See Suarez v. Transmontaigne Servs., Inc.*, 127 So. 3d 845, 847 (Fla. 4th DCA 2013) ("Where an employee covered by the workers' compensation act is injured

on the job, the employee's sole remedy against his employer is through the provisions of the act. His employer is immune from negligence claims arising out of the same injury." (citing § 440.11(1), Fla. Stat. (2012)). AlliedBarton's disclaimer does not subvert the workers' compensation scheme, but rather, fully utilizes the statutory scheme as the plaintiff's sole means of recovery. In no way does the disclaimer interfere with "the quick and efficient delivery of disability and medical benefits to an injured worker." *See* § 440.015, Fla. Stat. (2017).

We also note that this waiver extends only to negligent conduct and does not infringe on the public policy prohibition of waiving liability for intentional torts, as the waiver only extends to injuries covered by workers' compensation. *See Aguilera*, 905 So. 2d at 90 ("Functionally, the worker's compensation system limits liability only for *negligent workplace conduct* which produces workplace injury, but does not extend to immunize intentional tortious conduct."); *Turner v. PRC, Inc.*, 754 So. 2d 683, 687 (Fla. 2000) ("Today we reaffirm our prior decisions recognizing, as have our district courts and many jurisdictions around the country, that workers' compensation law does not protect an employer from liability for an intentional tort against an employee."), *superseded by statute on other grounds*, § 440.11(1)(b), Fla. Stat. (2003), *as noted in R.L. Haines Constr., LLC v. Santamaria*, 161 So. 3d 528, 530-31 (Fla. 5th DCA 2014); *see also* § 440.11(1)(b), Fla. Stat. (2017) (the intentional tort exception).

At least two courts from other states have considered this same AlliedBarton disclaimer and found that it did not contravene public policy. *See Bowman v. Sunoco, Inc.*, 65 A.3d 901 (Pa. 2013); *Brown v. 1301 K Street Ltd. P'ship*, 31 A.3d 902 (D.C. 2011).[2]

In *Bowman*, the Pennsylvania Supreme Court accepted jurisdiction to determine whether AlliedBarton's disclaimer contravened Pennsylvania public policy. 65 A.3d at 908. The court ruled that the waiver did not violate the text of section 204(a) of Pennsylvania's Workers' Compensation Act—a statutory provision prohibiting agreements that waive a claim for

---

[2] The Supreme Court of New Jersey has also considered this waiver and held that it violated New Jersey public policy. *See Vitale v. Schering-Plough Corp.*, 174 A.3d 973 (N.J. 2017). In addition to finding the waiver invalid on the grounds that it violated N.J.S.A. 34:15-40 (Section 40)—a provision resembling section 440.39, Florida Statutes—the court found that it also violated N.J.S.A. 34:15-39 (Section 39)—*a statutory provision without a Florida counterpart. Id.* at 986. Section 39 provides: "No agreement, composition, or release of damages made before the happening of any accident . . . shall be valid or shall bar a claim for damages for the injury resulting therefrom, and any such agreement is declared to be against public policy." N.J.S.A. 34:15-39.

damages prior to an injury. *Id.* The court explained that the workers' compensation statute was intended to apply to agreements barring a claim against an employer, rather than to claims against a third party. *Id.* After examining the history of the Pennsylvania workers' compensation statute, the court determined that the legislature provided two alternative tracks by which an employee could recover for a workplace injury. *Id.* The employee could recover under a statutory scheme or through a traditional action at law. *Id.* The court held:

> [B]ecause the Act once provided for a dual system of recovery, which made it a violation of public policy for an employer to avoid *both* recovery tracks, and continues to provide for an action at law when the employer is uninsured, we conclude public policy is not violated where, as here, the employee is absolutely covered under one of those two tracks, namely, the compensation scheme provided by Article III.

*Id.* The court concluded by noting the similar decisions of other courts and stated:

> Appellant was not forced to sign the release, and the release did not in any way prevent her from receiving compensation for her work-related injuries as provided by the Act. As the Appeals Court of Massachusetts found in *Horner v. Boston Edison Company*, 45 Mass. App. Ct. 139, 695 N.E.2d 1093 (1998), the disclaimer here "extinguishes only the employee's right to recover additional amounts as a result of a work-related injury for which the employee has already received workers' compensation benefits." *Id.* at 1095. Similarly, the Supreme Court of Arkansas found, with facts nearly identical to the present case, a similar disclaimer did not violate public policy because it did not indicate the employer was "attempting to escape liability entirely, but [was] instead, attempting to shield its clients from separate tort liability for those injuries that are covered by workers' compensation . . . ." *Edgin v. Entergy Operations, Inc.*, 331 Ark. 162, 961 S.W.2d 724, 727 (1998).

*Id.* at 910 (alteration in original) (footnote omitted).

Similar to the Pennsylvania decision, the District of Columbia Court of Appeals found that the exculpatory clause at issue here did not violate public policy. *See Brown*, 31 A.3d at 906-07. The court explained that it had invalidated exculpatory clauses disclaiming liability for self-dealing by

a personal representative of a will and in the housing context with landlords trying to contract around the implied warranty of habitability. *Id.* The court continued, however, by explaining: "[i]n this case . . . we find nothing violative of public policy in an employer's choice to protect its customers from liability for workplace injuries, choosing instead to compensate its employees itself exclusively through workers' compensation." *Id.* at 907. The court concluded by noting that the plaintiff voluntarily entered into the agreement and declined to invalidate the contract on the basis that it was offered on a "take it or leave it" basis. *See id.* at 907, n.4 (quoting *Moore v. Waller*, 930 A.2d 176, 182 (D.C. 2007)).

Here, as in *Bowman* and *Brown*, the plaintiff here was not coerced into signing the agreement and voluntarily agreed, as a condition of employment, to limit his avenues for recovery with respect to any future injuries to the State's workers' compensation program. The disclaimer was limited in both scope and application and did not prevent the "the quick and efficient delivery of disability and medical benefits to an injured worker." *See* § 440.015, Fla. Stat. (2017). As such, we hold that AlliedBarton's disclaimer is not void based on public policy considerations.

## Conclusion

We agree with the trial court that the disclaimer signed by the plaintiff is unambiguous, not in violation of Florida public policy and, thus, enforceable. Accordingly, the trial court's final summary judgment is affirmed.

*Affirmed.*

LEVINE, C.J., and DAMOORGIAN, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***