359 So.2d 512 (1978)
ORKIN EXTERMINATING COMPANY, INC., a Foreign Corporation, Appellant,
v.
Michael M. MONTAGANO, Appellee.
No. 76-2537.
District Court of Appeal of Florida, Fourth District.
May 23, 1978.
Jonathan J. Davis of Walton, Lantaff, Schroeder & Carson, Fort Lauderdale, for appellant.
H.C. Feige of Patterson, Maloney & Shankweiler, Fort Lauderdale, for appellee.
LETTS, Judge.
This case concerns an exculpatory clause in a termite agreement limiting liability to re-treatment only. The trial judge denied a motion to dismiss for failure to state a cause of action and allowed the case to go to the jury, also denying motions for a directed verdict. The jury award to the house owner was $9,554.00 for termite damage caused because of defective treatment. We affirm.
It is inescapable that Florida courts recognize and uphold, not only contracts with exculpatory clauses which limit liability, but also those which exempt liability altogether. Middleton v. Lomaskin, 266 So.2d 678 (Fla. 3d DCA 1972); Kinkaid v. Avis Rent-A-Car Systems, 281 So.2d 223 (Fla. 4th DCA 1973). Furthermore, in Orkin Exterminating Company of South Florida v. Clark, 253 So.2d 884 (Fla. 3d DCA 1971), the court upheld a clause in a termite agreement limiting the termite company's liability to $5,000, even though the damage had been caused by inadequate treatment by the termite company. However, in this last cited case, possible ambiguity in the wording of the terms of the agreement was not an issue discussed in the court's opinion, whereas all the other cases cited include language such as, for example:
"Generally, exculpatory contracts which attempt to relieve a party of his own negligence are not looked upon with favor; however, such contracts have been held valid and enforceable in Florida, where such intention was made clear and unequivocal in such contract."

Middleton v. Lomaskin, supra.

Accordingly, to be enforceable, the contract must be clear and unequivocal on the liability question and we do not think the instant agreement passes the test of clarity or unequivocation.
*513 On the first page of the termite agreement, now before us, the following is set forth:
"ORKIN is to issue the type of guaranty as checked below:
[] Lifetime Control and Repair (LR) [] None
&check; Lifetime Control (LC) [] Pretreat (PR)"
The box styled "Lifetime Control" was clearly checked off.
Further down, on the same first page, the following sentence appears:
"This agreement shall be comprised of this Contract, the General Terms and Conditions as they appear on the reverse side, the accompanying Graph and Specifications, and, upon issuance, the Guaranty."
Turning to the said reverse side of the agreement, we discover that the first two paragraphs there appearing, are set forth in large bold face block capital letters[1] in the same chronology that follows:
"SPECIAL TOTAL PROTECTION LIFETIME SUBTERRANEAN TERMITE GUARANTY.
SUBJECT TO THE GENERAL TERMS AND CONDITIONS, ORKIN WILL ISSUE A SPECIAL TOTAL PROTECTION LIFETIME SUBTERRANEAN TERMITE GUARANTY AND, AT NO EXTRA COST, MAKE SUCH REPAIRS TO THE STRUCTURE AND CONTENTS TO REMEDY ANY NEW DAMAGE CAUSED BY SUBTERRANEAN TERMITES, PROVIDED THAT IT IS ESTABLISHED THAT SAID NEW DAMAGE WAS CAUSED BY SUBTERRANEAN TERMITES AFTER THE DATE OF INITIAL TREATMENT AND THAT AT THE TIME OF DISCOVERY OF THE NEW DAMAGE, THE DAMAGED AREAS ARE INFESTED WITH LIVE SUBTERRANEAN TERMITES. ORKIN WILL BE RESPONSIBLE FOR SUCH REPAIRS ONLY WHEN MADE WITH ORKIN'S APPROVAL AND UNDER ORKIN SUPERVISION AND CONTROL. THE PURCHASER FURTHER UNDERSTANDS THAT ORKIN'S LIABILITY FOR SUCH REPAIRS SHALL IN NO EVENT EXCEED $100,000.00 AGGREGATE LOSS AND IS LIMITED TO STRUCTURAL AND CONTENTS DAMAGE.
SUBTERRANEAN TERMITE CONTROL GUARANTY.
SUBJECT TO THE GENERAL TERMS AND CONDITIONS, ORKIN WILL ISSUE A CONTROL GUARANTY AND, AT NO EXTRA COST, APPLY ANY NECESSARY ADDITIONAL TREATMENT TO THE PREMISES IF REINFESTATION IS FOUND THEREIN DURING THE PERIOD OF THE GUARANTY. THE PURCHASER FURTHER UNDERSTANDS THAT ORKIN'S LIABILITY UNDER THIS AGREEMENT IS LIMITED TO RETREATMENT ONLY AND IN NO WAY, IMPLIED OR OTHERWISE, IS RESPONSIBLE FOR DAMAGES OR REPAIRS TO THE STRUCTURE OR CONTENTS."
There is not one word on this reverse side to indicate that these paragraphs are not both applicable and that in actuality they are intended to be in the alternative. Nor is there any explanation as to which one applies in this instance.[2] The sole "tip off" as to what the coverage really is, becomes apparent only when one refers back to the applicable category boxes on the preceding page of the agreement. Moreover, even if argued that the householder should be reasonably required to refer back, the title headings do not track each other. Thus, the box entitled "Lifetime Control and Repair" is apparently arbitrarily changed to read "Special Total Protection Lifetime Subterranean Termite Guaranty" and likewise the front page box actually checked and identified as "Lifetime Control" apparently *514 becomes, on the reverse side, "Subterranean Termite Control Guaranty."[3]
There is no evidence in the record that the employed methodology and terminology was deliberately designed to mislead gullible consumers, but honesty requires the author of this opinion to confess that he was himself confused as to the applicability of the opening block capital paragraph on the reverse side. The appellant will undoubtedly attribute this confusion to lack of gray matter within this writer's head. Be that as it may, we are unanimous that the agreement is ambiguous on its face. This ambiguity is not in our opinion cured by the later delivery of a piece of paper grandly termed a "Guarantee", but which, in fact, is but a unilateral statement of intent to inspect the premises and retreat them for free, if the prior treatment is unsuccessful.
Admittedly, the annual inspection fee was but $25.00 and it may seem unreasonable to hold the termite company accountable for the results of major termite damage occurring by reason of its failure to rid the premises of infestation. After all, as appellant argues, who could reasonably expect such protection for a mere $25.00 a year? This is a compelling argument, but when we consider that we do not look with favor on exculpatory clauses, we must require the draftsmen of all contracts which contain them to use clear and unequivocal language totally without a hint of deceptive come-on, or inconsistent, clauses. In our opinion, it is clear that the appellee might be misled to believe that he enjoyed the kind of protection offered in the opening clause, on the reverse side of his contract, in the largest bold face type of the entire page.
We find the remaining points on appeal without merit.
AFFIRMED.
DOWNEY, C.J., and ANSTEAD, J., concur.
NOTES
[1] The remainder of the reverse side provisions are in small regular type.
[2] Furthermore, there is unexpectedly no explanatory paragraph on the third category entitled "Pretreat (PR)".
[3] Referring to the remaining general clauses in small type, we note # 1 which begins "... Orkin is not responsible for the repair of visible damage existing as of the date of this contract... ." This again raises the expectation that Orkin is responsible for damage occurring after the contract date.