Ciklin, C.J.
Myra L. Brooks and Ronald R. Brooks, the plaintiffs below, appeal the final summary judgment' entered in this medical malpractice case in favor of the defendants below, Michael D. Paul, M.D., and MacMil-lan, Paul and Burkarth P.A., d/b/a Treasure Coast Neurosurgery. The plaintiffs argue that the trial court erred in finding that a release executed by the patient, Myra L. Brooks (“Myra”), unambiguously waived negligence claims. We agree that the release, read in its entirety, was unclear and ambiguous as to negligence claims. Accordingly, we reverse and remand for further proceedings.
In ■ 2013, the ■ plaintiffs brought suit against the defendants, and others not relevant to this appeal, alleging negligence. Specifically, Myra alleged that during a spinal fusion surgery, .her ureter was cut, resulting in significant injuries. The defendants moved for summary judgment based on a purported exculpatory release executed by Myra before the surgery. The release contains the following language:
As of January 1, 2003, Dr. Michael D. Paul, and the piofessional corporation of MacMillan, Paul and Burkarth, P.A., also known as Treasure Coast Neurosurgery, will not carry'any medical malpractice insurance. Being of sound mind and sound body, I hereby acknowledge this fact and agree not to sue Dr. Michael D. Paul, or the professional corporation of MacMillan Paul and Burkarth, P.A. for any reason.' My reason for doing this is that I realize that Dr. Michael D. Paul and his staff will do the very best to take care of me according to community medical-standards.
The trial court entered summary judgment in favor of the defendants, finding the release to be , “completely unambiguous” in releasing claims of negligence.
“The standard of review of an order granting summary judgment is de novo.” Fini v. Glascoe, 936 So.2d 52, 54 (Fla. 4th DCA 2006). When “the enforceability' of- [a] pre-injury release is a question of law arising from undisputed facts, the standard of review is de novo.” Kirton v. Fields, 997 So.2d 349, 352 (Fla. 2008).
“An exculpatory clause purports to deny an injured party the right to recover damages from the person negligently causing his injury.” Kitchens of the Oceans, Inc. v. McGladrey & Pullen, LLP, 832 So.2d 270, 272 (Fla. 4th DCA 2002) (quoting O'Connell v. Walt Disney World Co., 413 So.2d 444, 446 (Fla. 5th DCA 1982)). “Exculpatory clauses are disfavored in the law because- they relieve one party *888 of the obligation to use due care and shift the risk of injury to the party who is probably least equipped to take the necessary precautions to avoid injury and bear the risk of loss.” Loewe v. Seagate Homes, Inc., 987 So.2d 758, 760 (Fla. 5th DCA 2008). Further, such clauses “will be strictly construed against the party claiming to be relieved of liability.” Murphy v. Young Men’s Christian Ass’n of Lake Wales, Inc., 974 So.2d 565, 567-68 (Fla. 2d DCA 2008). “ ‘Such clauses are enforceable only where and to the extent that the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away.’ ” Id. at 568 (quoting Southworth & McGill, P.A. v. S. Bell Tel. & Tel. Co., 580 So.2d 628, 634 (Fla. 1st DCA 1991)).
In them motion for summary judgment, the defendants relied on Sanislo v. Give Kids the World, Inc., 157 So.3d 256 (Fla. 2015). In that case, the parents of a seriously ill child sued a non-profit organization that provided free vacations to such children and their families at its resort village, alleging that the organization’s negligence resulted in a wheelchair lift collapsing and injuring one of the parents. Id. at 258-59. In connection with the free vacation, the parents signed a liability release form, which provided as follows:
I/we hereby release Give Kids the World, Inc. and all of its agents, officers, directors, servants, and employees from any liability whatsoever in connection with the preparation, execution, and fulfillment of said wish, on behalf of ourselves, the above named wish child and all other participants. The scope of this release shall include, but not be limited to, damages or losses or injuries encountered in connection with transportation, food, lodging, medical concerns (physical and emotional), entertainment, photographs and physical injury of any kind....
I/we further agree to hold harmless and to release Give Kids the World, Inc. from and against any and all claims and causes of action of every kind arising from any and all physical or emotional injuries and/or damages which may happen to me/us....
Id. at 258-59.
The charitable organization moved for summary judgment based on the release. Id. at 259. After the trial court denied the organization’s motion and the jury found in favor of the appellants, the Fifth District reversed, finding that the release encompassed negligence claims even though it did not expressly reference negligence actions. Id. (citing Give Kids the World, Inc. v. Sanislo, 98 So.3d 759, 761-62 (Fla. 5th DCA 2012)). On appeal, the Florida Supreme Court held that a negligence claim may be barred by a release even if the release does not explicitly reference negligence actions. Id. at 270. The Court explained that the test is whether the language of the exculpatory clause “unambiguously demonstrates a clear and understandable intention to be relieved from liability so that an ordinary and knowledgeable person will know what he or she is contracting away.” Id. at 271. The Court found that the language of the release “clearly conveys, that Give Kids the World would be released from any liability, including negligence, for damages, losses, or injuries due to transportation, food, lodging, entertainment, and photographs.” Id. at 270. The Court further reasoned as follows:
[Tjhis agreement specifically operates to release Give Kids the World in connection with circumstances that are not inherently dangerous. Thus, this is not a situation where a person of ordinary intelligence would believe that the re *889 lease “could most reasonably be taken merely as driving home the fact that the defendant was not to bear any responsibility for injuries that ordinarily and inevitably would occur, without any fault of the defendant.” Accordingly, this agreement would be rendered meaningless if it is deemed ineffective to bar a negligence action solely on the basis of the absence of the legal terms of art “negligence” or “negligent acts” from the otherwise clear and unequivocal language in the agreement.
Id. at 271 (citation omitted).
The instant case is more akin to the exculpatory provisions that were found ambiguous in Goyings v. Jack and Ruth Eckerd Foundation, 403 So.2d 1144 (Fla. 2d DCA 1981); Murphy, 974 So.2d 565; and UCF Athletics Ass’n v. Plancher, 121 So.3d 1097 (Fla. 5th DCA 2013). In Goyings, the exculpatory clause was contained in a contract between a children’s camp and the mother of a child. It provided the following:
It is further agreed that reasonable precautions will be taken by Camp to assure the safety and good health of said boy/girl but that Camp is not to be held liable in the event of injury, illness or death of said boy/girl, and the undersigned, does fully release Camp, and all persons concerned therewith, for any such liability.
403 So.2d at 1145-46. On appeal from a summary judgment in the camp’s favor, the Second Distinct reversed, finding the language was ineffective where there was no reference to negligence. Id. at 1146. Although this reasoning was subsequently found to be erroneous in Sanislo, the Second District also reasoned as follows:
By their own choice of language, appel-lees agreed to take reasonable precautions to assure [the child’s] safety. This duty to undertake reasonable care expressed in the first part of the provision would be rendered meaningless if the exculpatory clause absolved appellees from liability. We cannot ignore this language because all terms of a contract provision must be read as a whole to give every statement meaning. Construing the exculpatory clause as a whole, appellees’ release from liability rests on their exercise of reasonable care to ensure [the child’s] safety and good health.
Id. at 1146-47 (citations omitted). This portion of Goyings was not expressly disapproved of by the Court in Sanislo.
In Murphy, 974 So.2d at 566-67, after a woman was injured while using exercise equipment at the YMCA’s gym, she sued the YMCA for negligence in failing to maintain, inspect; and repair its exercise equipment. With reservations, the trial court granted the YMCA’s summary judgment motion, which was based on an exculpatory provision in the membership application. Id. at 567. The waiver “specifically state[s] that' 'the YMCA is not liable for ‘any claims based on negligence,’ ” and also states, “I understand that even when every reasonable precaution is taken, accidents can sometimes still happen.” Id. at 566-68. The court reasoned that “the juxtaposition of the ‘every reasonable precaution’ provision with the provision for the release of ‘any claims based on negligence’ ” resulted in confusion'. Id. at 568. The court further reasoned as follows:
A reasonable reader might be led to believe that the waiver of liability extends only to claims for injuries that were unavoidable “even when every reasonable precaution” had been taken by the YMCA. In light of the “every reasonable precaution” language, the waiver does not clearly and unequivocally release the YMCA from liability and is therefore not enforceable. See Orkin Exterminating Co. v. Montagano, 359 So.2d 512, 514 (Fla. 4th DCA 1978)
*890 (“[W]hen we consider that we do not look with favor on exculpatory clauses, we must .require the draftsmen .of all contracts which contain them to use clear and .unequivocal language totally without a hint of deceptive come-on, or inconsistent, clauses.”). -
Id. at 568-69 (alteration in original).
In UCF Athletics Ass’n, 121 So.3d at 1102-03, quashed in part on other, grounds by Plancher v. UCF Athletics Ass’n, 175 So.3d 724, 729 (Fla. 2015), the Fifth District relied on the reasoning in Murphy in finding that an exculpatory provision-did not bar a negligence action brought by the parents of a college football player who collapsed during football practice after participating in a series of conditioning drills. In that case, the decedent executed a waiver that provided as follows in pertinent part:
I am aware that playing, practicing, training and/or other involvement in any sport can be a dangerous activity involving MANY RISKS OF INJURY, including, but not limited to the potential for catastrophic injury. I understand that the dangers and risks of playing, practicing, or training in any athletic activity include, but are not limited to, death, serious neck and spinal injuries which may result in complete or partial paralysis, serious injury to virtually all bones, joints, ligaments, muscles, tendons, and other aspects of the muscular-skeletal system, and serious injury or impairment to other aspects of my body, general health and well-being. Because of the aforementioned dangers of participating in any athletic activity, I recognize the importance of following all instructions of the coaching staff, strength and conditioning staff, and/or Sports Medicine Department. Furthermore, I understand that the possibility of injury, including catastrophic injury, does exist even though proper rules and techniques are followed to the fullest. I also understand that there are risks involved with traveling in connection with intercollegiate athletics.
In consideration of the University of Central Florida Athletic Association, Inc. permitting me to participate in intercollegiate athletics and to engage in all activities and travel related to my sport, -I hereby voluntarily assume all risks associated-with participation and agree to exonerate, save harmless and release the University of Central Florida Athletic Association, Inc., its agents, servants, trustees, and employees from any and all liability, any medical expenses not covered by the University of Central Florida Athletic Association’s athletics medical insurance coverage, and all claims, causes of action or demands of any kind and nature whatsoever which may arise by or in connection with my participation in any activities related to intercollegiate athletics.
Id. at 1100-01. The Fifth District observed that the exculpatory clause did not expressly inform the decedent that he would be waiving his right to sue the athletic association for its own negligence, but recognized that under its precedent; this was not sufficient reason, standing alone, to find the provision was not applicable to negligence claims. Id. at 1101-02. The court then reasoned that the athletic association immediately preceded the broad waiver language with a paragraph that outlined the risks inherent in any sport and stated that because of these risks, the decedent recognized the importance of following all instructions of staff, and understood that even catastrophic injury was possible even when proper rules and techniques are followed. Id. at 1102. The court further reasoned: ■
This preamble, when coupled with a clause that does not expressly state that [the decedent] would be waiving a negligence action, could have easily led [him] *891 to believe that [the athletic association] would be supervising his training and instructing him properly (non-negligently), and that he was only being asked to sign the exculpatory clause to cover injuries inherent in the sport—that could occur “even though proper rules and techniques are followed to the fullest.”
Id. The athletic association argued that there was no confusion, as the two provisions are in separate paragraphs and not connected by the word “therefore.” Id. at 1102-03. The court rejected the argument:
[W]hen read together, the provisions underscoring the importance of following [the athletic association’s] rules and the risk of an accident regardless of whether the proper rules and techniques are followed, comes before the exculpatory clause, which could result in the reasonable reading asserted by the [appellees]. This is because the reader is first assured, inferentially, that the proper rules and techniques will be implemented before he comes to the language waiving liability.
Id. at 1103.
Here, the purported release is rife with ambiguity and uncertainty. The exculpatory provision appears in smaller font below a statutory notice regarding the doctor’s decision not to carry malpractice insurance. The provision is not thorough or detailed. It does not expressly release any particular type of claims and it comprises three sentences which, read together, are contradictory. The first sentence reiterates the fact that the doctor and his practice do not carry malpractice insurance. The second sentence acknowledges that Myra understands this and agrees not to sue for “any reason.” The third sentence provides Myra’s reason for agreeing not to sue— because she .believes the doctor and his staff will do their “very best to take care of me according to community medical standards.”
The first two sentences, read in isolation, are broad and arguably encompass a negligence claim. However,, as in Goyings, Murphy, and UCF Athletics Ass’n, Inc., there is additional language in the release that creates ambiguity about exactly what type of claims are being released. The third sentence, which qualifies, the first two sentences, creates an ambiguity. Indeed, if the defendants intended to be released from their own negligence, it begs the question as to why the third sentence is included in the release. Unlike the release in Sanislo, the language in the release here could lead “a person of ordinary intelligence [to] believe that the release could most reasonably be taken merely as driving home the fact that the defendant was not to bear any responsibility for injuries that ordinarily and inevitably would occur, without any fault of the defendant.” Sanislo, 157 So.3d at 271 (quoting Gross v. Sweet, 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306, 311 (1979)).
Based on the foregoing, we reverse and remand for further proceedings.

Reversed and remanded.

Gross and Conner, JJ., concur.