# Third District Court of Appeal

## State of Florida

Opinion filed May 9, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2620
Lower Tribunal No. 15-12254
_____

**Obsessions in Time, Inc., et al.,**
Appellants,

vs.

**Jewelry Exchange Venture, LLLP,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Rosa I. Rodriguez, Judge.

Mansfield, Bronstein & Stone, LLP, and David Stone, Gary N. Mansfield, Ariane Wolinsky (Fort Lauderdale), for appellants.

Stok Folk + Kon, and Robert A. Stok and Natasha Shaikh, for appellee.

Before SALTER, EMAS and LINDSEY, JJ.

EMAS, J.

Appellants, Obsessions in Time, Inc. and Marc Shaffman ("Obsessions"), appeal the trial court's order dismissing their third amended complaint with prejudice. Because we conclude the exculpatory clause in the lease agreement is ambiguous and unenforceable, we reverse the order of dismissal.

## FACTS AND PROCEEDINGS BELOW

In May 2009, Obsessions leased a booth from Jewelry Exchange Venture, LLLP ("Jewelry Exchange") to sell classic watches and other valuable items. Jewelry Exchange provided a master safe in which Obsessions had the option to store their valuable items. The lease agreement, prepared by Jewelry Exchange, required that all valuables must be in the vault within one hour of closing. In addition, paragraph 37 of the lease states in relevant part as follows:

> In making this lease, it is hereby agreed that lessor does not assume the relations and duty of bailee and shall not be liable for any loss or damage to the contents of the vault within the premises caused by burglary, fire, or any cause whatsoever, but that the entire risk of such loss or damage is assumed by the lessee. The lessor shall not be liable for any delay caused by failure of the vault doors to lock, unlock or otherwise operate and the sole liability of the lessor hereunder is limited to the exercise of ordinary care to prevent the opening of said vault or boxes contained therein by any person other than lessee or the authorized agent of the lessee.

Obsessions alleged that an employee of Jewelry Exchange allowed an unauthorized individual to access and remove Obsessions' items, which were stored in the master safe, resulting in a loss in excess of $2 million. Obsessions filed suit and, following several amendments, the operative Third Amended

2

Complaint asserted claims against Jewelry Exchange for breach of contract (Count VIII) and negligence (Count IX). Jewelry Exchange moved to dismiss the Third Amended Complaint and, following a hearing, the trial court granted the motion and dismissed these claims with prejudice.[1] The trial court later denied Obsessions' motion for rehearing, and this appeal followed.

**ANALYSIS**

We review de novo an order granting a motion to dismiss for failure to state a cause of action. Morin v. Fla. Power & Light Co., 963 So. 2d 258, 260 (Fla. 3d DCA 2007).

On appeal, Obsessions contends that, contrary to the trial court's determination that the exculpatory clause in the lease agreement is clear and unambiguous, the clause is in fact ambiguous, and thus, unenforceable. We agree. As the Florida Supreme Court has observed:

> Public policy disfavors exculpatory contracts because they relieve one party of the obligation to use due care and shift the risk of injury to the party who is probably least equipped to take the necessary precautions to avoid injury and bear the risk of loss.

---

[1] The trial court's order dismissed with prejudice all claims against Jewelry Exchange and was therefore an appealable partial final judgment. See Fla. R. App. P. 9.110(k) (providing: "If a partial final judgment totally disposes of an entire case as to one party, it must be appealed within 30 days of rendition"). Obsessions also sued the individual who allegedly stole the items from the safe, Michael Fisher, and his company, Timepiece Collection, LLC, alleging nine additional counts. The claims against those defendants were dismissed without prejudice, and remain pending below in a subsequently-filed Fourth Amended Complaint.

3

<u>Sanislo v. Give Kids the World, Inc.</u>, 157 So. 3d 256, 260 (Fla. 2015) (citations omitted).

Because exculpatory provisions are viewed with disfavor, "Florida law requires that such clauses be strictly construed against the party claiming to be relieved of liability." <u>Sunny Isles Marina, Inc. v. Adulami</u>, 706 So. 2d 920, 922 (Fla. 3d DCA 1998). To be enforceable, the language of the exculpatory provision must be clear, unambiguous and unequivocal:

> Exculpatory clauses are unambiguous and enforceable where the intention to be relieved from liability was made clear and unequivocal and the wording was so clear and understandable that an ordinary and knowledgeable person will know what he or she is contracting away.

<u>Sanislo</u>, 157 So. 3d at 260-61. <u>See also</u> <u>Gayon v. Bally's Total Fitness Corp.</u>, 802 So. 2d 420, 421 (Fla. 3d DCA 2001) (the wording of an exculpatory clause must be so clear and understandable that "an ordinary and knowledgeable person will know what he is contracting away").

The exculpatory provision in the instant case fails to meet this standard. The lease agreement provides in relevant part:

> In making this lease, it is hereby agreed that lessor does not assume the relations and duty of bailee and **shall not be liable for any loss or damage to the contents of the vault within the premises caused by burglary, fire, or any cause whatsoever, but that the entire risk of such loss or damage is assumed by the lessee**. The lessor shall not be liable for any delay caused by failure of the vault doors to lock, unlock or otherwise operate and **the sole liability of the lessor hereunder is limited to the exercise of ordinary care to prevent**

4

**the opening of said vault or boxes contained therein by any person other than lessee or the authorized agent of the lessee.**

(Emphasis added).

As can be seen, these two highlighted and juxtaposed portions create an ambiguity:

- The lessor "shall not be liable for any loss or damage to the contents of the vault within the premises caused by burglary, fire, or any cause whatsoever . . . ."
- "[T]he sole liability of the lessor hereunder is limited to the exercise of ordinary care to prevent the opening of said vault or boxes contained therein by any person other than lessee or the authorized agent of the lessee.

Although the first provision plainly appears to relieve Jewelry Exchange of any liability, the second provision plainly appears to impose liability should Jewelry Exchange fail to exercise ordinary care to prevent unauthorized access to the vault and boxes. These two provisions within the same paragraph of the lease agreement are not reconcilable, and render the exculpatory clause unclear, equivocal and ambiguous. We also conclude, following our review of the entire lease agreement, that none of its remaining provisions renders this conflicting language clear, unequivocal or unambiguous.

In <u>Adulami</u>, 706 So. 2d at 922, this court affirmed the trial court's order finding an exculpatory clause ambiguous and unenforceable. Sunny Isles Marina

5

owned and operated a marina and dry storage facility. Id. at 921. Adulami and other plaintiffs owned boats and stored them at Sunny Isles Marina pursuant to a boat storage agreement. Id. A fire broke out at the facility, causing damage to several boats, including Adulami's. Id. Adulami and other boat owners filed insurance claims, alleging that the fire was the result of Sunny Isles' improper installation, maintenance, and use of a portable battery charging system aboard one of the boats. Id. Sunny Isles filed a declaratory judgment action, seeking a determination that it was relieved of all liability based upon the exculpatory clause contained in the boat storage agreement entered into with the boat owners. Id. That exculpatory clause provided in pertinent part:

> 7. RISK OF LOSS. The assigned space shall be occupied at the sole risk of the Owner. Owner agrees that the Marina is not the insurer of the Boat.... The Marina shall not be liable in any way for any loss or damage sustained by Owner or anyone claiming by, through or under Owner which arises **out of any cause not attributable to the willful gross negligence of the Marina**, nor shall the Marina be liable for any loss or damage to the Boat, its equipment or property stored thereon, due to fire, theft, vandalism, collision, Marina equipment failure, wind storm, rain, hurricane or other casualty loss. Personal property aboard the Boat is stored at the sole risk of Owner for loss from any cause.

> 8. INDEMNIFICATION. The Owner hereby waives any right it has to claim any damages or other loss or liability from the Marina, its employees or agents arising out of any accident, fire, or other casualty about the Marina, **whether the same results from any act or neglect of the Marina or any occupant, invitee, guest or other persons in or about the Marina.**

6

Owner agrees to indemnify the Marina against all claims, actions, liability and damages, including attorney's fees, whether claimed by the owner, its guests, family, employees, agents or other third parties, arising out of the Owner's possession and use of the storage space and other facilities of the Marina.

Owner agrees to indemnify the Marina from and against any claim, suit, loss, liability or costs, including attorney's fees, arising out of, or resulting from, any use, operation or occupancy of the Boat by Owner or anyone claiming by, through or under Owner.

Id. (Emphasis added.)

In affirming the trial court's dismissal of Sunny Isles' declaratory action, we noted the manifest ambiguity when reading paragraphs seven and eight in pari materia, and held the exculpatory clause was unenforceable:

On the one hand, section seven of the Sunny Isles boat storage agreement purports to absolve Sunny Isles of liability for any actions except willful gross negligence. On the other hand, paragraph eight of the agreement purports to absolve Sunny Isles from any form of negligence (be it simple or gross).

Further, not only do paragraphs seven and eight conflict with each other, we also note a fatal ambiguity within paragraph seven's language. This paragraph first says that Sunny Isles is not liable for any loss not attributable to its willful gross negligence, but it also says that Sunny Isles is not liable for any loss due to fire, theft, vandalism, collision, etc. Thus, if there was damage to property due to, for example, theft, and that theft was caused by the willful gross negligence of Sunny Isles, it is unclear which clause of that sentence in paragraph seven would prevail; the one which says Sunny Isles can be liable, or the one which says Sunny Isles cannot be liable. The next sentence of paragraph seven, which states that personal property aboard the boat is stored at the sole risk of the owner for loss from any cause, creates a similar ambiguity.

Because of the ambiguity caused by the conflict of paragraphs seven and eight, and the internal conflict within paragraph seven, we find that an ordinary and knowledgeable party would not know what he or she is contracting away in this regard.

Id. at 922.

In Murphy v. Young Men's Christian Association of Lake Wales, Inc., 974 So. 2d 565 (Fla. 2d DCA 2008), Murphy brought a personal injury action, alleging negligence against the YMCA. The trial court entered summary judgment in favor of the YMCA based upon a membership application signed by Murphy, purporting to release YMCA from all liability and all claims, including those based on negligence. Id. at 566. That release provided in pertinent part:

I am an adult over 18 years of age and wish to participate in Lake Wales Family YMCA activities. In addition I give my children permission to participate in Lake Wales Family YMCA activities. **I understand that even when every reasonable precaution is taken, accidents can sometimes still happen.** Therefore, in exchange for the YMCA allowing me to participate in YMCA activities, I understand and expressly acknowledge that **I release the Lake Wales Family YMCA and its staff members from all liability for any injury, loss or damage** connected in any way whatsoever to my (or my children's) participation in YMCA activities, whether on or off the YMCA's premises. **I understand that this release includes any claims based on negligence**, action or inaction of the Lake Wales Family YMCA, its staff, directors, members and guests. I have read and am voluntarily signing this authorization and release.

Id. (emphasis added).

The Second District reversed, finding the exculpatory clause ambiguous and unenforceable:

We recognize that the waiver in the instant case does specifically state that the YMCA is not liable for "any claims based on negligence." However, the waiver also suggests that the YMCA will take "every reasonable precaution" against accidents. Confusion results from the juxtaposition of the "every reasonable precaution" provision with the provision for the release of "any claims based on negligence." A reasonable reader might be led to believe that the waiver of liability extends only to claims for injuries that were unavoidable "even when every reasonable precaution" had been taken by the YMCA. In light of the "every reasonable precaution" language, the waiver does not clearly and unequivocally release the YMCA from liability and is therefore not enforceable.

Id. 568-69.

In Brooks v. Paul, 219 So. 3d 886 (Fla. 4th DCA 2017), the Fourth District similarly reversed a summary judgment upon a finding that the exculpatory clause contained in a release form was ambiguous. In Brooks, plaintiff filed suit alleging her doctor and other medical providers were negligent during a spinal fusion surgery. Defendants moved for summary judgment based upon an exculpatory clause in the release executed by plaintiff prior to surgery. That clause read:

As of January 1, 2003, Dr. Michael D. Paul, and the professional corporation of MacMillan, Paul and Burkarth, P.A., also known as Treasure Coast Neurosurgery, will not carry any medical malpractice insurance. Being of sound mind and sound body, I hereby acknowledge this fact **and agree not to sue** Dr. Michael D. Paul, or the professional corporation of MacMillan Paul and Burkarth, P.A. **for any reason. My reason for doing this is that I realize that Dr. Michael D. Paul and his staff will do the very best to take care of me according to community medical standards.**

Id. at 887 (emphasis added).

9

The trial court entered summary judgment in favor of the defendants. The Fourth District reversed, holding that "[t]he third sentence, *which qualifies the first two sentences*, creates an ambiguity. Indeed, if the defendants intended to be released from their own negligence, it begs the question as to why the third sentence is included in the release." Id. at 891.

Turning to the instant case, if (as appellee urges) the exculpatory clause was intended to relieve lessor/appellee from all liability for loss or damage, regardless of its nature or cause, it begs the question of why that same clause would include this phrase: "the sole liability of the lessor hereunder is limited to the exercise of ordinary care to prevent the opening of said vault or boxes contained therein by any person other than lessee or the authorized agent of the lessee." As our sister court observed in construing a similarly ambiguous exculpatory clause:

> By their own choice of language, appellees agreed to take reasonable precautions to assure [the child's] safety. This duty to undertake reasonable care expressed in the first part of the provision would be rendered meaningless if the exculpatory clause absolved appellees from liability. We cannot ignore this language because all terms of a contract provision must be read as a whole to give every statement meaning. Construing the exculpatory clause as a whole, appellees' release from liability rests on their exercise of reasonable care to ensure [the child's] safety and good health. Whether appellees fulfilled this duty is a factual question which the trial court must resolve.

> Goyings v. Jack & Ruth Eckerd Found., 403 So. 2d 1144, 1146 (Fla. 2d

DCA 1981), disapproved on other grounds by Sanislo, 157 So. 3d at 271.

## CONCLUSION

In a single clause, Jewelry Exchange purported to absolve itself of all liability for loss or damage while at the same time agreeing that its "sole liability" was "limited to the exercise of ordinary care to prevent the opening of the vault by any person other than lessee or the authorized agent of the lessee." As in Murphy, Brooks and Goyings, this latter provision would be rendered meaningless if we were to construe the exculpatory clause to absolve Jewelry Exchange of all liability. We hold that the exculpatory clause is ambiguous: While purporting to relieve Jewelry Exchange of all liability, the exculpatory clause concurrently imposes a duty upon Jewelry Exchange to exercise ordinary care to prevent the unauthorized opening of the vault or boxes, and potential liability if Jewelry Exchange failed to exercise such care. Thus, the trial court erred in entering its final order of dismissal with prejudice.[2]

We reverse the final judgment of dismissal and remand this cause to the trial court for further proceedings consistent with this opinion.

---

[2] Because we reverse the trial court's order on this ground, we need not address the other arguments raised on appeal.

11