# Third District Court of Appeal

## State of Florida

Opinion filed April 24, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1126
Lower Tribunal No. 16-4301
_____

**Lazaro Fresnedo,**
Appellant,

vs.

**Porky's Gym III, Inc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Thomas J. Rebull, Judge.

Eaton & Wolk, PL, and Douglas F. Eaton, for appellant.

Law Offices of Cara Morris, PL, and Cara C. Morris (Palm Beach Gardens), for appellee.

Before EMAS, C.J., and FERNANDEZ and LOGUE, JJ.

EMAS, C.J.

Lazaro Fresnedo filed a complaint against Porky's Gym III, Inc., alleging he sustained serious injuries when he was knocked unconscious by another customer (Mr. Coto) who was using the gym that day on a single-day pass.[1]

In his complaint, Fresnedo alleged that Porky's had a legal duty to ensure that it maintained its premises in a safe manner, free from dangers of which it knew or reasonably should have known, and to warn Fresnedo of any dangers of which it knew or reasonably should have known. The complaint further alleged that Porky's breached its duties to Fresnedo by allowing Mr. Coto on the premises without first obtaining the information required to issue a single-day pass; by failing to warn Fresnedo regarding Mr. Coto's behavior; and by failing to remove Mr. Coto from the facility (who allegedly displayed aggressive behavior prior to his attack on Fresnedo).

Porky's moved for summary judgment based upon the affirmative defenses of waiver and assumption of the risk, relying upon a waiver and release form signed by Fresnedo when he became a member of Porky's. Following a hearing, the trial court granted final summary judgment in favor of Porky's. This appeal followed. We review the issue de novo, Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126 (Fla. 2000), and consider the record in a light most

---

[1] Fresnedo sustained facial fractures as a result of the attack and underwent facial reconstructive surgery. The individual who attacked Fresnedo was later arrested and charged with a felony.

favorable to the non-moving party. Turner v. PCR, Inc., 754 So. 2d 683 (Fla. 2000); Davis v. Baez, 208 So. 3d 747 (Fla. 3d DCA 2016).

Exculpatory clauses, such as the one at issue here, "that purport to deny an injured party the right to recover damages from another who negligently causes injury are strictly construed against the party seeking to be relieved of liability." Gillette v. All Pro Sports, LLC, 135 So. 3d 369, 370 (Fla. 5th DCA 2014). In addition, courts are required to read such clauses *in pari materia,* giving meaning to each of its provisions, to determine whether the intention to be relieved was made clear and unequivocal in the contract, such that an ordinary person would know what he was contracting away. See Covert v. S. Fla. Stadium Corp., 762 So. 2d 938, 940 (Fla. 3d DCA 2000); Sunny Isles Marina, Inc. v. Adulami, 706 So. 2d 920, 922 (Fla. 3d DCA 1998). See also Sanislo v. Give Kids the World, Inc., 157 So. 3d 256, 260-61 (Fla. 2015) (holding: "Exculpatory clauses are unambiguous and enforceable where the intention to be relieved from liability was made clear and unequivocal and the wording was so clear and understandable that an ordinary and knowledgeable person will know what he or she is contracting away"); Diodato v. Islamorada Asset Mgmt., Inc., 138 So. 3d 513, 517 (Fla. 3d DCA 2014) (reiterating the "well-settled principle that [exculpatory] clauses are disfavored and are narrowly construed" and reversing summary judgment where exculpatory clause at issue was not "clear and unequivocal" in its attempt to release defendant

3

from liability for specific act of negligence); Gillette, 135 So. 3d at 370; Tatman v. Space Coast Kennel Club, Inc., 27 So. 3d 108, 110 (Fla. 5th DCA 2009) (noting that the wording of an exculpatory clause "must be so clear and understandable that 'an ordinary and knowledgeable person will know what he is contracting away'") (quoting Gayon v. Bally's Total Fitness Corp., 802 So. 2d 420, 421 (Fla. 3d DCA 2001)); Murphy v. Young Men's Christian Ass'n of Lake Wales, Inc., 974 So. 2d 565 (Fla. 2d DCA 2008); Orkin Exterm. Co. v. Montagano, 359 So. 2d 512, 514 (Fla. 4th DCA 1978) (holding that because "we do not look with favor on exculpatory clauses, we must require the draftsmen of all contracts which contain them to use clear and unequivocal language totally without a hint of deceptive come-on, or inconsistent clauses").

After reviewing the waiver and release form signed by Fresnedo, we cannot say that the exculpatory clauses at issue clearly and unequivocally waived Porky's liability for the negligence alleged by Fresnedo in his complaint. We therefore reverse the final judgment and remand for further proceedings.

For its contrary position, the dissenting opinion relies exclusively on a single paragraph of the release (paragraph Four), in which Fresnedo agreed that he would "assume full responsibility for any risk of bodily injury, death or negligence of any of the clubs or otherwise while [I am] on the premises occupied by any of the clubs."

4

Although this single paragraph of the release relied upon by the dissent may itself be plain and clear, the release is not comprised of a single paragraph, and we must read paragraph Four together with the other paragraphs of the release to determine whether "an ordinary and knowledgeable person will know what he is contracting away." Gayon, 802 So. 2d at 421.

The three paragraphs immediately preceding the paragraph relied upon by the dissent provide as follows (all emphasis added):

1.     You understand **that the use of the Clubs' facilities and equipment tests a person's physical limits and carries with it a potential for serious injury and/or death, such as injuries caused by weights falling, equipment malfunctioning, cables snapping, defects in or improper maintenance of equipment or premises, inadequate supervision or instruction, intentional or unintentional misuse of the equipment (by you or others), the negligent acts of others with regard to the facilities and equipment (including the actions of any employees of the Club), and other dangers inherent in strenuous physical activity.** You are aware of and accept these risks. You also understand and agree that **it is your sole responsibility to determine whether you are sufficiently fit and/or healthy enough to safely use the equipment and/or facilities of any of the Clubs.** You affirm that you will be sufficiently fit and physically trained to use the equipment of the Clubs you choose to use.

2.  In consideration of your membership with any of the Clubs, you, for yourself, and for anyone else who can claim through you, hereby release each of the Clubs, and their employees, officers, directors, and agents, from any claim (of any nature whatsoever) that you may have, now or in the future, **for any injuries you incur while you are on the premises occupied by any of the Clubs, *such as* heart attacks, muscle strains, pulls or tears, broken bones, shin splints, heat prostration, knee/lower back/foot injuries, and any other illness, soreness or injury however caused, occurring during or after your**

5

**use of the equipment or facilities of any of the Clubs, whether caused by the active or passive negligence of any of the Clubs**.

3. Additionally, you, for yourself, and for anyone else who can claim through you, hereby release each of the Clubs, and their employees, Officers, directors, and agents, from any claims (of any nature whatsoever) that you may have, now or in the future, for any damage to any of your property incurred while you are on the premises occupied by any of the Clubs, whether caused by the active or passive negligence of any of the Clubs or otherwise.

The fourth paragraph reads:

**4. YOU ASSUME FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE DUE TO THE NEGLIGENCE OF ANY OF THE CLUBS OR OTHERWISE WHILE YOU ARE ON THE PREMISES OCCUPIED BY ANY OF THE CLUBS.**

Paragraph Four does indeed provide that the member assumes "full responsibility for any risk of bodily injury [or] death due to the negligence of the clubs." However, that language cannot be read in isolation, but instead must be read and understood in light of, and together with, the language of preceding paragraphs One and Two. Those two paragraphs address the "risk of bodily injury" in much greater detail than paragraph Four, yet inexplicably do so in the specific context of:

- "the *use of the Clubs' facilities and equipment* [which] tests a person's physical limits and carries with it a potential for serious injury and/or death, **such as** injuries caused by weights falling, equipment malfunctioning, cables snapping, defects in or improper maintenance of equipment or premises, inadequate supervision or instruction, intentional or unintentional

6

misuse of the equipment (by you or others), the negligent acts of others with regard to the facilities and equipment (including the actions of any employees of the Club), and other dangers inherent in strenuous physical activity." (Paragraph One)

- "injuries you incur while you are on the premises occupied by any of the Clubs, _**such as**_ heart attacks, muscle strains, pulls or tears, broken bones, shin splints, heat prostration, knee/lower back/foot injuries, and any other illness, soreness or injury however caused, occurring during or after your use of the equipment or facilities of any of the Clubs, whether caused by the active or passive negligence of any of the Clubs." (Paragraph Two)

If (as the dissent posits) the broad language contained in paragraph Four is so plain, clear, unambiguous and all-encompassing, why would paragraphs One and Two be necessary at all? These three paragraphs (One, Two and Four), when read together, could reasonably lead a person to believe that the "risk of bodily injury [or] death" being assumed in paragraph Four refers to injuries "such as" those specifically and extensively enumerated in paragraphs One and Two— injuries which occur as a result of, or related to, "the use of the Club's facilities and equipment." Indeed, this is precisely how Mr. Fresnedo understood the language of the waiver and release form. As he explained in his declaration filed in opposition to Porky's motion for summary judgment:

> [My] understanding of these forms was that I was giving up my right to pursue claims against Porky's Gym in the event that I was injured while performing the activity that I came to the gym to do, which was work out. . . . [B]ecause of the specificity of the release, it was my

7

understanding that I was merely giving up the right to purse any claims against the facility if I was injured as a result of my work out.[2]

We find the instant case similar in material respects to the Second District's decision in Murphy, 974 So. 2d at 568, and the Fifth District's decision in UCF Athletics Ass'n Inc. v. Plancher, 121 So. 3d 1097 (Fla. 5th DCA 2013) (quashed in part on different grounds by Plancher v. UCF Athletics Ass'n Inc., 175 So. 3d 724 (Fla. 2015)). In both cases, our sister courts held that, despite an exculpatory clause's waiver of liability for "any negligence" or "all claims," other provisions in the clauses created an ambiguity or confusion for a reasonable reader, rendering the exculpatory clause unenforceable. See also Brooks v. Paul, 219 So. 3d 886 (Fla. 4th DCA 2017) (holding that although two sentences in an exculpatory clause "are broad and arguably encompass a negligence claim," because "there is additional language in the release that creates ambiguity about exactly what type of claims are being released," summary judgment was not proper.)

_____

[2] Regarding the affirmative defense of express assumption of the risk, the Fourth District observed in Van Tuyn v. Zurich Am. Ins. Co., 447 So. 2d 318, 320-21 (Fla. 4th DCA 1984):

> For express assumption of risk to be valid, either by contract or by voluntary participation in an activity, it must be clear that the plaintiff understood that she was assuming the particular conduct by the defendants which caused her injury. Restatement of Torts, Second, § 496B, comment d. No agreement to assume unknown risks shall be inferred. Therefore, unless this plaintiff subjectively understood the risks inherent in [the activity] and actually intended to assume those risks, the defense of express assumption of risk is unavailable to the defendants.

Reading the paragraphs of the waiver and release form together and in context, we hold that it remains in dispute whether the intention to be relieved from liability for the type of claim brought by Fresnedo is clear and unequivocal, and whether the wording is so clear and understandable that an ordinary and knowledgeable person would know that he was contracting away his right to pursue the instant claim brought by Fresnedo against Porky's.

Reversed and remanded.

FERNANDEZ, J., concurs.

LOGUE, J. (Dissenting)

I respectfully dissent. When Mr. Fresnedo joined Porky's Gym III, a fitness club, he signed a release waiving any claim of "bodily injury . . . due to the negligence of . . . the Clubs . . . while you are on the premises." He then sued the Club, as he states in his complaint, for bodily injuries due to the negligent failure of the Club "to ensure that its premises were reasonably safe and free from dangers." Does this release bar this cause of action? The language of the release is so simple and direct that it could have no other meaning. Therefore, the trial court correctly granted summary judgment because the release signed by Mr. Fresnedo bars his cause of action for negligence against the Club.

This appeal arises out of a case in which Lazaro Fresnedo, Appellant, sued the Club for negligence. Mr. Fresnedo is a member of the Club. While working out at the Club, he was viciously attacked by another patron, who was present under a day pass. The other patron had been shadow boxing and otherwise acting erratically when he suddenly turned and punched Mr. Fresnedo, who was knocked unconscious and suffered serious personal injuries as a result. In his complaint, which is captioned "Negligence," Mr. Fresnedo alleged the Club violated its "legal duty to ensure that its premises were reasonably safe and free from dangers." The

Club moved for summary judgment contending that a release signed by Mr. Fresnedo barred his cause of action for negligence against the Club. The trial court granted summary judgment and Mr. Fresnedo appealed.

The only issue before this court is whether the language of the release signed by Mr. Fresnedo bars his cause of action as a matter of contract law. The release has nine separate numbered paragraphs, which Mr. Fresnedo individually initialed, before signing at the bottom. The separate paragraphs release different types of claims that Mr. Fresnedo might bring against the Club and required Mr. Fresnedo to indemnify the Club for damages due to his own negligence. The entire release is included in this footnote.[i]

The parts of the release pertinent to this appeal read as follows:

**RELEASE AND WAIVER OF LIABILITY**
PLEASE READ THE AGREEMENT CAREFULLY BEFORE SIGNING. BY SIGNING AND INITIALING BELOW YOU ARE AGREEING TO WAIVE YOUR LEGAL RIGHTS. ONCE YOU SIGN THIS DOCUMENT YOU WILL BE UNABLE TO BRING A LAWSUIT UNDER CERTAIN CIRCUMSTANCES.

\* \* \* \*

**4.** **YOU ASSUME FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE DUE TO THE NEGLIGENCE OF ANY OF THE CLUBS OR OTHERWISE WHILE YOU ARE ON THE PREMISES OCCUPIED BY ANY OF THE CLUBS.**
**Initials** *LF*

Florida law disfavors this type of contract which exculpates a person from responsibility for his or her own negligence because it runs contrary to the policy behind tort law that the tortfeasors should pay for the damage they negligently inflict. "Nevertheless, because of a countervailing policy that favors the enforcement of contracts, as a general proposition, unambiguous exculpatory contracts are enforceable unless they contravene public policy." Sanislo v. Give Kids the World, Inc., 157 So. 3d 256, 260 (Fla. 2015). Indeed, "[e]xculpatory clauses are unambiguous and enforceable where the intention to be relieved from liability was made clear and unequivocal and the wording was so clear and understandable that an ordinary and knowledgeable person will know what he or she is contracting away." Id. at 260–61.

Here, Mr. Fresnedo acknowledged that he was "waiving legal rights" that would render him "unable to bring a lawsuit under certain circumstances." He then went on to contract with the Club that he would "assume full responsibility for any risk of bodily injury . . . due to the negligence of . . . the Clubs or otherwise while you are on the premises . . . ." The simple truth is that there is no ambiguity in this perfectly clear language. The legislature could well decide that such releases signed by consumers are illegal. But a court would be hard pressed to fashion a rule of law requiring the release to be clearer.

Indeed, the majority opinion does not suggest the language of paragraph 4 is ambiguous. Instead, the majority discovers ambiguity in paragraph 4 only by reading it "in pari materia." "In pari materia" simply means the intent of the parties to a contract must be determined by examining the entire document: separate sentences or paragraphs cannot be taken out of context. But a simple examination of the release indicates that there is no confusion when these separate provisions are read as components of one document.

The paragraphs cited by the majority as creating confusion when read together are paragraphs 1, 2, 3, and 4. Although not a model of perfect drafting, and although some overlap occurs, these paragraphs essentially waive separate and distinct types of claims against the Club. Paragraph 1 waives bodily injuries arising from a claim that the Club failed to ensure Mr. Fresnedo was "sufficiently fit and/or healthy enough" to use the Club's gym equipment. Paragraph 2 waives bodily injuries arising from the use of the Club's gym equipment. Paragraph 3 waives damage to Mr. Fresnedo's property. Paragraph 4 waives bodily injury due to the Club's general failure to maintain the premises.

When read in pari materia, therefore, these four paragraphs are entirely consistent. Moreover, the fact that each paragraph was separately numbered and Mr. Fresnedo was required to separately initial each paragraph would signal to an

ordinary and knowledgeable person that the paragraphs were waiving different types of claims.

In his affidavit cited by the majority, Mr. Fresnedo asserts he understood that the release waived only "the right to pursue any claims against the facility if I was injured was a result of my work out." That is certainly a reasonable interpretation of paragraph 2 of the release. But if the release waived only injuries from working out, the release would have stopped with paragraph 2. Mr. Fresnedo's interpretation is therefore is not a reasonable reading of the release. In fact, it is completely inconsistent with the plain language of the next paragraph, paragraph 3, that waives claims "for any damage to any of your property incurred while you are on the premises" and paragraph 4 that waives claims, as stated above, for bodily injury "due to the negligence of any of the clubs or otherwise while you are on the premises." The broad language of these provisions are not limited to damages that occur during a workout.

An ordinary and knowledgeable person agreeing to this release would understand that it did not stop at paragraph two and that the subsequent, separately numbered paragraphs dealt with matters over and above those matters in the first two paragraphs. Therefore, particularly when the release is read in pari materia, an ordinary and knowledgeable person signing this release would be on notice that the plain language of paragraph 4 released claims like the one Mr. Fresnedo brought

here for bodily injuries due to the negligent failure of the Club "to ensure that its premises were reasonably safe and free from dangers."

The cases cited by the majority do not support its interpretation of the release at issue here. For example, Diodato v. Islamorada Asset Management, Inc., 138 So. 3d 513, 519-20 (Fla. 3d DCA 2014) merely held that summary judgment was improperly granted when it was uncertain whether the releases applied to the activity at issue. The plaintiff was killed during a deep sea dive. The diver charter moved for summary judgment based on a release the plaintiff had signed months earlier in order to participate in "basic open water instruction," and a second release the day before the tragedy to participate in a "shallow reef dive.'" Id. at 519. Industry standards provided for a more comprehensive release which listed the additional hazards in the more dangerous deep sea dives and the plaintiff had never signed such a release. This court held it was unclear whether the prior releases for the basic open water instruction and the shallow reef dive were intended to include the later deep sea dive. Id. at 519-20. Here there is no such ambiguity: the cause of action at issue is for the Club's violation of its "legal duty to ensure that its premises were reasonably safe and free from dangers" and the contract at issue releases and waives the "negligence of . . . the Clubs . . . while you are on the premises."

In <u>Gillette v. All Pro Sports, LLC</u>, 135 So. 3d 369, 370-71 (Fla. 5th DCA 2014) and <u>Tatman v. Space Coast Kennel Club, Inc.</u>, 27 So. 3d 108, 111 (Fla. 5th DCA 2009), the release provisions did not specifically address negligence or include the words "negligence" or "negligent." Here the contract signed by Mr. Fresnedo expressly releases causes of action based on "negligence."

In <u>Murphy v. Young Men's Christian Association of Lake Wales, Inc.</u>, 974 So. 2d 565, 568-69 (Fla. 2d DCA 2008), the exculpatory language excluded "any claims based on negligence," but the appellate court reversed because the language also provided that the YMCA would take "every reasonable precaution." The court concluded that the provision was unclear because "a reasonable reader might be led to believe that the waiver of liability extends only to claims for injuries that were unavoidable 'even when every reasonable precaution' had been taken by the YMCA." <u>Id.</u> at 568. As discussed above, there is no such conflict in the release that Mr. Fresnedo signed.

For these reasons, the trial court got it right: Mr. Fresnedo waived the very type of negligence claim he pursued against the Club. I would affirm the trial court.

---

[i] The release reads:

**RELEASE AND WAIVER OF LIABILITY**

16

PLEASE READ THE AGREEMENT CAREFULLY BEFORE SIGNING. BY SIGNING AND INITIALING BELOW YOU ARE AGREEING TO WAIVE YOUR LEGAL RIGHTS. ONCE YOU SIGN THIS DOCUMENT YOU WILL BE UNABLE TO BRING A LAWSUIT UNDER CERTAIN CIRCUMSTANCES.

In order to obtain access to any of the gyms operated by Porky's Gym I, Inc., Porky's Gym II, Inc., Porky's Gym III, Inc., and Porky's Gym IV, Inc. (collectively, the "Clubs") and join any of the clubs as a member, you understand, acknowledge and agree as follows

1.      You understand that the use of the Clubs' facilities and equipment tests a person's physical limits and carries with it a potential for serious injury and/or death, such as injuries caused by weights falling, equipment malfunctioning, cables snapping, defects in or improper maintenance of equipment or premises, inadequate supervision or instruction, intentional or unintentional misuse of the equipment (by you or others), **the negligent acts of others with regard to the facilities and equipment** (including the actions of any employees of the Club), and other dangers inherent in strenuous physical activity. **You are aware of and accept these risks. You also understand and agree that it is your sole responsibility to determine whether you are sufficiently fit and/or healthy enough to safely use the equipment and/or facilities of any of the Clubs. You affirm that you will be sufficiently fit and physically trained to use the equipment of the Clubs you choose to use**.  **Initials** *LF*

2.      **In consideration of your membership with any of the Clubs, you, for yourself, and for anyone else who can claim through you, hereby release each of the**

**Clubs, and their employees, officers, directors, and agents, from any claim (of any nature whatsoever) that you may have, now or in the future, for any injuries you incur while you are on the premises occupied by any of the Clubs, such as heart attacks, muscle strains, pulls or tears, broken bones, shin splints, heat prostration, knee/lower back/foot injuries, and any other illness, soreness or injury however caused, occurring during or after your use of the equipment or facilities of any of the Clubs, whether caused by the active or passive negligence of any of the Clubs.** Initials *LF*

3.    **Additionally, you, for yourself, and for anyone else who can claim through you, hereby release each of the Clubs, and their employees, Officers, directors, and agents, from any claims (of any nature whatsoever) that you may have, now or in the future, for any damage to any of your property incurred while you are on the premises occupied by any of the Clubs, whether caused by the active or passive negligence of any of the Clubs or otherwise**. Initials *LF*

4.    **YOU ASSUME FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE DUE TO THE NEGLIGENCE OF ANY OF THE CLUBS OR OTHERWISE WHILE YOU ARE ON THE PREMISES OCCUPIED BY ANY OF THE CLUBS**. Initials *LF*

5.    **YOU ARE ACKNOWLEDGE AND AGREE THAT THE CLUBS MAKE NO EXPRESS OR IMPLIED WARRANTIES OF ANY KIND**

18

**REGARDING MEMBERSHIP WITH ANY OF THE CLUBS OR THE USE OF THE FACILITIESS AND EQUIPMENT OF ANY OF THE CLUBS. Initials _LF_**

6.      You agree that this Release shall be interpreted as broad and inclusive as in Permitted by law of the State of Florida and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full force and effect. You have read this Release and agree that no oral representations, statements, warranties or inducements have been made to you. **Initials _LF_**

7.      You agree to indemnify and save and hold harmless each of the Clubs from any loss, liability, damage or cost any of them may incur as a result of your acts or omissions on the premises of any of the Clubs. **Initials _LF_**

8.      Any person signing below on behalf of a minor under the age of 18 hereby acknowledges that he or she has the legal capacity and authority to act on behalf of the minor and to legally bind the minor to this Release, and they agree to indemnify and hold harmless each of the Clubs for any expenses incurred, claims made, or liabilities assessed against any of them as a result of any insufficiency of legal capacity or authority to act on behalf of the minor in the execution of this Release. **Initials _LF_**

9.      I have read and voluntarily sign this Agreement and I agree that no oral representations, statements apart from what is contained in this Agreement have been made to me. **Initials _LF_**